IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REALTIME DATA LLC d/b/a IXO,               )
                                           )
              Plaintiff,                    )
                                           )
       v.                                   )    C.A. No. 18-1267 (CFC)
                                           )
TEGILE SYSTEMS, INC., WESTERN               )
DIGITAL TECHNOLOGIES, INC. and              )
WESTERN DIGITAL CORPORATION,                )
                                           )
              Defendants.                   )

**DEFENDANTS WESTERN DIGITAL TECHNOLOGIES, INC. AND WESTERN
DIGITAL CORPORATION'S OPENING BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com
jlyons@mnat.com

OF COUNSEL:

R. Adam Lauridsen
Matthew M. Werdegar
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400

October 17, 2018

*Attorneys for Defendants Western Digital
Technologies and Western Digital Corporation*

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.   SUMMARY OF THE ARGUMENT ...............................................................................1

III.  STATEMENT OF FACTS ..............................................................................................2

IV.   LEGAL STANDARD .....................................................................................................3

V.    ARGUMENT ..................................................................................................................5

      A.    The '728 patent lacks patent-eligible subject matter. ...............................................5

            1.    *Alice* Step One:  the '728 patent is directed to the abstract idea of analyzing data and processing data based on the analysis. ........................6

            2.    *Alice* Step 2:  the '728 patent does not contain an inventive concept. ...................................................................................................8

            3.    The '728 patent's non-identified claims are ineligible under § 101. .........11

      B.    The '751 patent lacks patent-eligible subject matter. .............................................12

            1.    *Alice* Step 1:  the '751 patent is directed to the abstract idea of analyzing data and processing data based on the analysis. ........................13

            2.    *Alice* Step 2:  the '751 patent does not contain an inventive concept. ...................................................................................................14

            3.    The '751 patent's non-identified claims are ineligible under § 101. .........16

      C.    The '908 and '530 patents lack patent-eligible subject matter. .............................16

            1.    *Alice* Step 1:  the '908 and '530 patents are directed to the abstract idea of compressing and storing data using more than one compression technique. ..............................................................................17

            2.    *Alice* Step 2:  the '908 and '530 patents do not contain an inventive concept. .....................................................................................19

            3.    The '908 and '530 patents' non-identified claims are ineligible under § 101. ................................................................................................19

VI.   CONCLUSION..............................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*
    728 F.3d 1336 (Fed. Cir. 2013)....................................................................3, 5

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)..........................................................1, 2, 9, 18

*Alice Corp. v. CLS Bank International*,
    132 S. Ct. 1289 (2012) ........................................................................ *passim*

*Bascom Global Internet Services, Inc. v. AT&T Mobility, LLC*
    827 F.3d 1341 (Fed. Cir. 2016) .....................................................................10

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018).......................................................................4

*buySAFE, Inc. v. Google Inc.*,
    964 F. Supp. 2d 331 (D. Del. 2013), *aff'd*, 765 F.3d 1350 (Fed. Cir. 2014)...........................14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)........................................................... *passim*

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
    558 Fed. App'x 988 (Fed. Cir. 2014).................................................................6

*Data Engine Techs. LLC v. Google LLC*,
    -- F.3d --, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018) ........................................19

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014).......................................................................4

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)..............................................................4, 6, 7, 13

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................... *passim*

*FairWarning IP, LLC v. Iatric Sys.*,
    839 F.3d 1089 (Fed. Cir. 2016).......................................................................3, 8

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)............................................................. *passim*

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)..................................................................4

*Intellectual Ventures I LLC v. Capital One Fin. Corp*.
   850 F.3d 1332 (Fed. Cir. 2017).......................................................... *passim*

*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co*.
   76 F. Supp. 3d 536 (D. Del. 2014)...........................................................3

*Intellectual Ventures I LLC v. Symantec Corp*.
   838 F.3d 1307 (Fed. Cir. 2016)...............................................4, 8, 9, 12

*Interval Licensing LLC v. AOL, Inc*.,
   896 F.3d 1335 (Fed. Cir. 2018)...............................................9, 13, 18

*Jedi Techs., Inc. v. Spark Networks, Inc*.
   No. 16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017).....................6, 8, 11

*Mayo Collaborative Services v. Prometheus Laboratories, Inc*.,
   134 S. Ct. 2347 (2014)...................................................................3

*OIP Techs., Inc. v. Amazon.com, Inc*.,
   788 F.3d 1359 (Fed. Cir. 2015)...........................................................3

*RecogniCorp, LLC v. Nintendo Co*.,
   855 F.3d 1322 (Fed. Cir. 2017)...............................................2, 6, 7, 13

*SAP Am., Inc. v. Investpic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)...........................................................3, 6

*Synopsys, Inc. v. Mentor Graphics Corp*.,
   839 F.3d 1138 (Fed. Cir. 2016)...........................................................4, 14

*TDE Petroleum Data Solutions, Inc. v. AKM Enterprise, Inc*.
   657 Fed. App'x 991 (Fed. Cir. 2016)...............................................13, 18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*
   874 F.3d 1329 (Fed. Cir. 2017)........................................................ *passim*

*Ultramercial, Inc. v. Hulu, LLC*
   772 F.3d 709 (Fed. Cir. 2014)...............................................3, 12, 16

**Rules and Statutes**

35 U.S.C. § 101.......................................................................... *passim*

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Defendants Western Digital Technologies, Inc. and Western Digital Corporation (collectively, "Western Digital") are industry leading developers, manufacturers and providers of data storage devices and solutions for enterprises and individuals.  Since 1970, Western Digital and its affiliates have been recognized repeatedly for their data storage innovations and have received thousands of United States patents.  Plaintiff Realtime Data LLC ("Realtime") is a non-practicing patent licensing entity that has sued dozens of companies in this District and elsewhere.  Realtime sued Western Digital on August 20, 2018.  By this motion, Western Digital responds to Realtime's complaint, which asserts infringement of four related patents.

## II.   SUMMARY OF THE ARGUMENT

Claims reciting only functional results, without describing any particular improvement in computer functionality for achieving those results, are abstract and ineligible for patent protection under 35 U.S.C. § 101.[1]  For example, the Federal Circuit has affirmed the invalidity of a claim for streaming digital audio/video content over the internet that "require[d] the functional results of 'converting,' 'routing,' 'controlling,' monitoring,' and 'accumulating records,' but d[id] not sufficiently describe how to achieve the results in a non-abstract way."[2]  Each of the four related patents asserted by Realtime in this action suffers from this fatal defect.[3]

---

[1] *See, e.g., Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it.  Our law demands more."); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("purely functional nature of the claim confirms that it is directed to an abstract idea, not a concrete embodiment of that idea").

[2] *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

[3] Realtime alleges that Western Digital infringes United States Patents Nos. 9,054,728 ("'728 patent"), 9,677,751 ("'751 patent"), 7,415,530 ("'530 patent") and 9,116,908 ("'908 patent").

1

The claims in Realtime's patents all are directed to analyzing data, processing (*i.e.*, compressing or decompressing) the data based on the analysis, and storing or transmitting the data—all concepts which the Federal Circuit has previously held to be abstract[4]—without reciting any specific technological solution for accomplishing these generic, non-computer-specific information processing tasks. As such, the claims fail step one of the *Alice* test.

The patents' claims also provide no "inventive concept" that could transform them into patent-eligible subject matter. The patents emphasize that any number of well-known compression and decompression algorithms may be used to carry out the claimed methods. And all of the functional components of the claimed systems are described as generic computer components—such as "processors," "memory systems," "encoders" and "decoders"—performing standard functions. Moreover, those conventional components are arranged in a conventional order. Thus, "the recited physical components merely provide a generic environment in which to carry out the abstract idea of" manipulating and storing data.[5]

Because the claims of the asserted patents are patent-ineligible, Realtime has failed to state a claim upon which relief can be granted, and its Complaint should be dismissed.

## III.    STATEMENT OF FACTS

Western Digital presents facts relevant to the patents in the argument subsections below.

---

[4] *See, e.g., RecogniCorp, LLC v. Nintendo Co*., 855 F.3d 1322, 1326 (Fed. Cir. 2017) (claimed "method reflects standard encoding and decoding, an abstract concept long utilized to transmit information"); *In re TLI Commc'ns LLC Patent Litig*., 823 F.3d 607, 611 (Fed. Cir. 2016) (claim "drawn to the concept of classifying an image and storing the image based on its classification" patent ineligible); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The concept of data collection, recognition, and storage is undisputedly well-known.").

[5] *Affinity Labs*, 838 F.3d at 1269.

## IV.    LEGAL STANDARD

"Patent eligibility under 35 U.S.C. § 101 is an issue of law."[6]   "[I]n many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."[7]   Subject-matter-eligibility questions do not necessarily require claim construction. "No formal claim construction [is] required" when "the asserted claims disclosed no more than an abstract idea garnished with accessories and there [is] no reasonable construction that would bring [them] within patentable subject matter."[8]

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.* and *Alice Corp. v. CLS Bank International*,[9] the Supreme Court set out a two-step framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."[10]   The first step is to determine if the patent claims are directed to a patent-ineligible concept such as an abstract idea.  "In the case of abstractness, the court must determine whether the claim poses 'any risk of preempting an abstract idea.'  To do so, the court must first 'identify and define whatever fundamental concept appears wrapped up in the claim.'"[11]

Notwithstanding the recitation of computer implementation, claims that involve "analyzing information by steps people go through in their minds, or by mathematical

---

[6] *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).

[7] *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quotation omitted); *see also, SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

[8] *Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*, 76 F. Supp. 3d 536, 544 (D. Del. 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014)) (quotations omitted).

[9] 132 S. Ct. 1289 (2012); 134 S. Ct. 2347 (2014).

[10] *Alice*, 134 S. Ct. at 2355.

[11] *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (quotation omitted).

algorithms, without more [are] essentially mental processes within the abstract-idea category."[12] For example, the Federal Circuit has held that computer-implemented claims directed to collecting, recognizing, and storing data,[13] customizing information based on information known about the user and navigation data,[14] and organizing information through mathematical correlations[15] are abstract.

At step two, the court must determine whether the claim includes an inventive concept sufficient to establish "that the claim is more than a drafting effort designed to monopolize the abstract idea."[16]  The claim must "amount[ ] to 'significantly more' than a patent on an ineligible concept."[17]  "As a matter of law, narrowing and reformulating an abstract idea does not add 'significantly more' to it."[18]  Likewise, appending well-known, routine, or conventional steps to an abstract idea, or reciting the abstract idea and adding "do it on a computer," is not enough to provide an inventive concept.[19]

"The § 101 inquiry must focus on the language of the Asserted Claims themselves."[20] Indeed, the Federal Circuit has held that it is error to rely on "technical[] details set forth in the patent's specification and not set forth in the claims to find an inventive concept."[21]  The Federal

---

[12] *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) ("*Symantec*").

[13] *Content Extraction,* 776 F.3d at 1347.

[14] *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015).

[15] *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014).

[16] *Alice*, 134 S. Ct. at 2357.

[17] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).

[18] *BSG Tech LLC v. Buyseasons, Inc*., 899 F.3d 1281, 1291 (Fed. Cir. 2018).

[19] *Alice*, 134 S. Ct. at 2357-59.

[20] *Synopsys, Inc. v. Mentor Graphics Corp.,* 839 F.3d 1138, 1149 (Fed. Cir. 2016).

[21] *Symantec*, 838 F.3d at 1322.

Circuit has explained, for example, that the "complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method."[22]

## V.    ARGUMENT

### A.    The '728 patent lacks patent-eligible subject matter.

The '728 patent is directed toward the abstract idea of compressing digital data.  The patent's specification explains that "[d]ata compression is widely used to reduce the amount of data required to process, transmit, or store a given quantity of information."[23]  The specification further notes the long-understood concept that the effectiveness of any given compression technique is contingent upon the content of the data being compressed, as some techniques work better on some kinds of data than others.[24]  To address this known issue, the '728 patent claims analyzing the contents of data to try to determine what method or methods of compression will be most effective, and then employing those methods.[25]  Specifically, representative claim 1 claims: (i) analyzing the content of a data block to identify one or more (unspecified) "parameters or attributes" of the data; (ii) if any parameters or attributes are identified, using one or more content-dependent data compressors to compress the data block; and (iii) if no parameters or attributes are identified, using another single data compressor.[26]

---

[22] *Accenture*, 728 F.3d at 1345.

[23] '728 patent (D.I.1-1) at 2:1-3, 2:41-45.

[24] '728 patent at 2:31-35.

[25] *See* '728 patent at Abstract

[26] *Id.* at 26:29-48.  Claim 1 is the exemplary claim in the complaint.  *See* Complaint ¶ 11.

### 1.   *Alice* **Step One:  the '728 patent is directed to the abstract idea of analyzing data and processing data based on the analysis.**

"A bedrock principle under *Alice* step one involves distilling claims to their basic concepts to determine whether they are directed to abstract ideas."[27]  Here, the basic concept of the '728 patent is clear from the claims—analyzing the contents of data to select what technique(s) to use to compress it, and then compressing the data using the selected technique(s). These information analysis and processing concepts are abstract.  "[A]nalyzing information by steps people go through in their minds, or by mathematical algorithms, without more is essentially mental processes within the abstract-idea category."[28]  So too is processing data by encoding or decoding it: "A process that started with data, added an algorithm, and ended with a new form of data was directed to an abstract idea."[29]  There is nothing more than this in the claims of the '728 patents.

Indeed, the basic concepts of the '728 patent are "undisputably well-known" methods for manipulating data that "humans have always performed."[30]  People have used various techniques for compressing data—such as scientific notation, the use of abbreviations, and shorthand—since long before the advent of computers.  And for just as long, people have analyzed data to

---

[27] *Jedi Techs., Inc. v. Spark Networks, Inc.*, No. 16-1055-GMS, 2017 WL 3315279, at *8 (D. Del. Aug. 3, 2017); *see also SAP Am.*, 898 F.3d at 1167 ("The first stage of the Alice inquiry looks at the 'focus' of the claims ….").

[28] *Elec. Power Grp.*, 830 F.3d at 1354; *see also, e.g., In re TLI Commc'ns*, 823 F.3d at 613 (finding abstract claims directed to "'collecting data,' 'recognizing certain data within the collected data set,' and 'storing the recognized data in memory,' attaching classification data"); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988, 991-92 (Fed. Cir. 2014) ("using categories to organize, store, and transmit information" is an abstract idea).

[29] *RecogniCorp*, 855 F.3d at 1326-27 (finding claim to be "directed to the abstract idea of encoding and decoding image data"); *see also, e.g., Intellectual Ventures I*, 850 F.3d at 1340 (organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept); *Digitech*, 758 F.3d at 1351 ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible.").

[30] *Content Extraction*, 776 F.3d at 1347.

determine what compression techniques are most appropriate, and then processed the data using the selected technique. For example, people can and do routinely review of the contents of data to determine if the data contains large numbers. And if the data does contain such numbers, people can and do use scientific notation to compress the data—such as by expressing 1,000,000,000 as $1 \times 10^9$. People also can and do review data to determine if it contains words amenable to abbreviation. And if the data does contain such words, people can and do use abbreviations to compress the data.

As courts have repeatedly held, mere analytical processes or mathematical algorithms are not saved from being abstract by virtue of being performed by a computer on digital data.[31] The known compression algorithms mentioned in the patents are all merely abstract mathematical formulas, applied to digital data (*i.e.*, binary numbers). Some of these mathematical algorithms are even straight-forward enough to be performed mentally by a person who has a basic familiarity with binary numbers. For example, the patents mention "techniques currently well known within the art such as run length" encoding.[32] Run length encoding uses the abstract mathematical function of replacing long runs of zeros or ones with a count of the zeros or ones. For example, the digital data "00000000111111110000" contains eight zeros, followed by eight ones, followed by four zeros. It can be run length encoded (*i.e.*, compressed) by a human mind as: 8 0 8 1 4 0.[33] While the other well-known compression algorithms mentioned in the patent

---

[31] *See, e.g.*, *Alice*, 134 S. Ct. at 2357-59; *RecogniCorp*, 855 F.3d at 1327; *Elec. Power Grp.,* 830 F.3d at 1354; *Digitech*, 758 F.3d at 1351.

[32] '728 patent at 7:13-17.

[33] This mathematical technique, which the patents describe as "well known," is also further explained in, for example, an IEEE publication cited on page 21 of the patents. *See* Declaration of Adam Lauridsen ("Lauridsen Decl.") Ex. A (Reghbati, "An Overview of Data Compression Techniques," IEEE, Apr. 1981) at p. 73.

may have more complicated steps, they all consist of nothing more than abstract mathematical steps applied to binary numbers.

Similarly, a human could perform the claimed step of examining the data content to determine if it was suitable for a particular kind of compression. For example, the data "00000000111111110000," with its long runs of zeros and ones, is plainly better suited to run-length encoding compression than data without repeated characters, such as: "10101010101010101010." Indeed, one of the few examples given in the specification of the patents for choosing a particular algorithm mentions using math (*i.e.*, "statistics") to determine the "the locality of repetition of characters" in the data.[34] Choosing the particular compression function is as abstract here as are the mathematical compression functions themselves.

In short, the '728 patent does nothing more than apply long-standing data analysis and processing methods to the digital realm. That is not enough: "Merely implement[ing] an old practice in a new environment" does not make claims non-abstract.[35] The '728 patent does not the claim any particular technique or solution that "improve[s] the functioning of the computer itself."[36] To the contrary, the claims are silent as to ***how*** to achieve any of the described results.

### 2.  *Alice* Step 2:  the '728 patent does not contain an inventive concept.

Turning to the second step of the *Alice* test, beyond their core abstract idea —analyzing data in order to select one or more compression techniques, and then using those techniques to

---

[34] '728 patent at 23:25-30.

[35] *FairWarning IP*, 839 F.3d at 1094; *see also In re TLI Commc'ns*, 823 F.3d at 613 ("[A]lthough the claims limit the abstract idea to a particular environment—a mobile telephone system—that does not make the claims any less abstract for the step 1 analysis."); *Jedi Techs.*, 2017 WL 3315279, at *10 ("Because the technology in question can be performed by a person, the patent does not touch upon a problem necessarily rooted in technology.") ; *see also Symantec*, 838 F.3d at 1319 (even ideas "that originated in the computer era" can be abstract where "well known" and/or "a long prevalent practice in the field of computers.").

[36] *Alice*, 134 S. Ct. at 2359.

compress the data—the claims of the '728 patent recite only conventional computer components and processes that are "insufficient to add an inventive concept to an otherwise abstract idea."[37] The '728 patent's identified system claim recites a generic processor, which the specification explains may be "a general purpose computer or any machine or device having any suitable and preferred microprocessor architecture."[38]  And the identified claim calls for generic "encoders," which the patent concedes was well-known as of the patent's priority date and which the specification explains may be comprised of any combination of "hardware, software, [or] firmware."[39]  The claims do not provide any details as to ***how*** the claimed functions are to be performed by these generic components.  "The claims thus do not go beyond 'stating [the relevant] functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology.'"[40] Likewise "the specification limits its discussion of the[ ] components to abstract functional descriptions devoid of technical explanation as to how to implement the invention."[41]

The lack of specificity or any inventive concept here risks significant preemptive effect—which the Supreme Court has identified as the core harm in allowing patents that purport

---

[37] *In re TLI Commc'ns*, 823 F.3d at 614.

[38] '728 patent at 6:30-37.

[39] *Id.* at 6:30-32, 7:13-17 ("[t]he encoder set E1, E2, E3 … En may include any number 'n' of those lossless encoding techniques ***currently well known within the art***." (emphasis added)); *see Symantec*, 838 F.3d at 1317 (noting that the specification "is particularly useful in determining what is well-known or conventional").

[40] *Affinity Labs*, 838 F.3d at 1271 (quoting *Elec. Power Grp.*, 830 F.3d at 1351); *see also Interval Licensing LLC v. AOL, Inc*., 896 F.3d 1335, 1344-45 (Fed. Cir. 2018) (finding abstract claim that "demands the production of a desired result … without any limitation on ***how*** to produce the result" (emphasis added)).

[41] *In re TLI Commc'ns*, 823 F.3d at 615; *see also Two-Way Media*, 874 F.3d at 1339 (no inventive concept where claim "only uses generic functional language to achieve the[ ] purported solutions").

to cover abstract concepts.[42]   The claims here do not specify what "parameters or attributes" of the data are to be identified in the generic "analysis."[43]   Even if it were appropriate to consult the specification for an inventive concept when none appears in the claims, the specification here is no help.   It merely offers, without explanation, that the parameters may include "any other parameters that may be indicative of either the data type/content of a given data block or the appropriate data compression algorithm . . . to be applied."[44]   There is nothing in the claims indicating any inventive encoding method, parameter, or specific method of analysis.[45]

The ordering of the elements is also non-inventive.   In *Bascom Global Internet Services, Inc. v. AT&T Mobility, LLC*, the Federal Circuit held that claims can have an inventive concept if they involve "non-conventional and non-generic arrangement of known, conventional pieces."[46] Here, unlike in *Bascom*, the identified claims of the '728 patent recite an ordering of elements that is entirely conventional, and is effectively mandated by the elements' generic, known functions:  data must be, and conventionally is, received before it may be analyzed to identify the appropriate encoder/decoder to use; data must be, and conventionally is, analyzed before the results of the analyses may be acted on; and data must be, and conventionally is, compressed or decompressed before that data can be stored, transmitted or output in its compressed or

---

[42]  *See, e.g.*, *Alice*, 134 S. Ct. at 2354 ("We have described the concern that drives this exclusionary principle as one of pre-emption.")

[43]  '728 patent at 26:29-48.

[44]  '728 patent at 16:22-28.

[45]  '728 patent at 7:28-33 (selectively enabling encoders to "tailor the operation of the data compression system" was "understood by those skilled in the art").

[46] 827 F.3d 1341, 1350 (Fed. Cir. 2016).  The claims in *Bascom* recited "installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id.*  The Federal Circuit concluded that this specific arrangement—of "associating individual accounts with their own filtering scheme and elements while locating the filtering system on an ISP server … cannot be said, as a matter of law, to have been conventional or generic."  *Id.*

decompressed form.[47]   Indeed, the ordering of the elements in the patents is no different from that of the content-dependent compression and decompression prior art discussed in the background section of the specification.[48]

### 3.  The '728 patent's non-identified claims are ineligible under § 101.

Realtime's identification of certain claims in its complaint invites the Court to focus on those claims.[49]   In *Content Extraction*, for example, the Federal Circuit found no error in the district court's decision to evaluate eligibility of 242 claims across four patents based on its analysis of two representative claims, even though the parties had not agreed beforehand on the set of representative claims.[50]   The Federal Circuit determined that it was "unnecessary" for the district court to address each claim individually to perform its analysis.[51]   But even if the Court were to comb through all of the unidentified claims, none satisfy Section 101.   The other independent claims—claims 24 and 25—all are analogous to the independent claims discussed above.   And the dependent claims add nothing material for Section 101 purposes.   Like the independent claims, they all recite only desired results[52] and/or the use of conventional computer

---

[47] *Cf. Two-Way Media*, 874 F.3d at 1339 (finding no inventive concept where claim "uses a conventional ordering of steps—first processing data, then routing it, controlling it, and monitoring its reception—with conventional technology to achieve its desired result").

[48] *See* '728 patent at 3:20-35 (describing prior art U.S. Patent No. 5,467,087 to Chu, which claims accepting an uncompressed data stream, performing an analysis to identify the data type of the input stream to select the best data compression method, and then compressing the data).

[49] *See, e.g., Elec. Power Grp.*, 830 F.3d at 1351-52 & n.1 (evaluating a representative claim for the asserted claims of the three patents-in-suit).

[50] 776 F.3d at 1348.

[51] *Id.* at 1347-48.

[52] *See, e.g.,* '728 patent at 26:57-27:3 (claims 4-8, claiming performing compression in "real time," but without reciting any technique for doing so); *cf. Jedi Techs.*, 2017 WL 3315279, at *10 ("Nor do the claims describing a 'real-time network' sufficiently limit the underlying abstract concept to allow patent-eligibility; the claim merely increases the speed or efficiency of implementing the abstract idea."); '728 patent at 27:37-41 (claim 18, claiming transmitting, receiving, and decompressing a compressed data block in less time than it takes to transmit and receive the data block uncompressed, but without reciting how to accomplish this result); *id.* at

components and techniques,[53] neither of which is sufficient to render the claims patent-eligible for all the same reasons discussed above.[54]

### B.    The '751 patent lacks patent-eligible subject matter.

The '751 patent purports to be about accelerating broadcast data transmission using compression and decompression.[55]   But the claims of the '751 patent are directed toward the same abstract idea of the related '728 patent—compressing digital data using encoders chosen via analyzing data content to identify a parameter associated with the encoder.   For example, representative claim 25 claims a generic computer server made up of conventional processors and memory, that: (i) analyzes the content of a data block to identify an unspecified "parameter, attribute, or value" of the data; (ii) selects an encoder associated with that parameter, attribute, or value, (iii) compresses the data using that encoder, and (iv) stores that compressed data.[56]   The independent claims further recite an abstract temporal result as a limitation—requiring that the time it takes to compress and store the compressed data block be less than the time it would take to store the uncompressed block.[57]   The '751 claims are therefore unpatentable for the same reasons as discussed above, and as further detailed below.

---

27:4-11 (claims 9-10, claiming associating with the compressed data block a "data token" indicative of the form of compression used, without claiming any technique for doing so).

[53] *See, e.g.*, '728 patent at 26:49-56 (claims 2 and 3, claiming receiving the data blocks in an uncompressed form); *id.* at 27:26-27 (claim 15, claiming storing the compressed data); 27:12-25; (claims 11-14, claiming using "lossless" and/or "lossy" data compression—both of which the specification makes clear were well known in the prior art); *see also id.* at 2:7-28 (describing in "background" section known lossy and lossless compression techniques).

[54] *See, e.g., Symantec*, 838 F.3d at 1316 ("[W]hen a claim directed to an abstract idea 'contains no restriction on how the result is accomplished' … then the claim is not patent eligible.") (internal citation omitted); *Ultramercial*, 772 F.3d at 716 ("[C]onventional steps, specified at a high level of generality, [are] insufficient to supply and inventive concept.").

[55] '751 patent (D.I. 1-2) at Abstract.

[56] *Id.* at 25:25-39 (claim 25).   Claim 25 is the exemplary claim.  *See* Complaint ¶ 27.

[57] '751 patent at 23:45-57 (claim 1), 25:25-39 (claim 25).

1. ***Alice* Step 1:  the '751 patent is directed to the abstract idea of analyzing data and processing data based on the analysis.**

The basic concept of the '751 patent is the same as the abstract concept of the '728 patent: analyzing the contents of data to select a compression technique, and then compressing the data using that technique—*i.e.,* an abstract "process that start[s] with data, add[s] an algorithm, and end[s] with a new form of data."[58]   The '751 claims add the generic computer step of storing the data, but does not change the abstract nature of the claims.[59]   Storing data is a conventional step that does not convey patent eligibility on its own.[60]

As discussed above, claims that merely recite results—especially ones that may be accomplished by people—without describing how they are to be accomplished are not patent-eligible under Section 101.[61]   The '751 patent suffers from the same lack of description of how the results are to be accomplished as the '728 patent claims discussed above.  The claims of the '751 patent do not indicate ***how*** the contents of data blocks are to be analyzed to "identify a parameter, attribute, or value," do not indicate what such a parameter might be, and do not indicate how an encoder is "associated" with the identified parameter.[62]   And the specification also fails to provide implementation details that could limit the abstract concept of choosing an

---

[58] *RecogniCorp*, 855 F.3d at 1327; *accord Digitech*, 758 F.3d at 1351.

[59] Storing is nothing more than a conventional step that does not convey patent eligibility.  *See, e.g., In re TLI Commc'ns*, 823 F.3d at 611 (claim "drawn to the concept of classifying an image and storing the image based on its classification" patent ineligible); *Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known.").

[60] *See, e.g.*, *TDE Petroleum Data Solutions, Inc., v. AKM Enterprise, Inc.*, 657 Fed. App'x 991, 993 (Fed. Cir. 2016) (describing "storing, gathering, and analyzing" as "the most ordinary of steps in data analysis").

[61] *See, e.g., Interval Licensing,* 896 F.3d at 1344-45; *Two-Way Media*, 874 F.3d at 1338; *Intellectual Ventures I*, 850 F.3d at 1342.

[62] '751 patent at 25:25-39.

encoder "associated with" particular data.[63]  In short, the claims are not in any way rooted in computer technology.

The last element of the independent claims of the '751 patent—that the time to compress and store the data block is less than the time to store the data block in uncompressed form—is also abstract and purely result-based.[64]  The claims do not explain **how** to achieve this temporal limitation: "The temporal limitation is not dependent on any specific programming, nor is it tied to any particular machine."[65]

## 2.    *Alice* Step 2:  the '751 patent does not contain an inventive concept.

Beyond the core abstract concept of analyzing data in order to select one or more compression or decompression techniques, and then using those techniques to compress or decompress the data—the claims of the '751 patent recite only conventional computer components and processes.  These generic computer parts and processes are "insufficient to add an inventive concept to an otherwise abstract idea."[66]  The '751 patent's claimed "data server," with its "processors" and "memory," is merely a "general purpose" computer server.[67]  And the

---

[63] *Id.* at Abstract ("Encoders associated with particular fields may be selected to compress those particular fields."), 18:47-48 (stating that: "Three types of encoding are utilized dependent upon the data fields and packet structure" without explaining how the choice is dependent upon the data fields or structure).

[64] *Id.* at 25:37-39 ("wherein the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form").

[65] *buySAFE, Inc. v. Google Inc.,* 964 F. Supp. 2d 331, 336 (D. Del. 2013), *aff'd*, 765 F.3d 1350 (Fed. Cir. 2014) (finding claim to be patent ineligible). The abstract nature of this element is further evidenced by the mathematical formulas the patent specification uses to detail it.  *See* '751 patent at 7:1-14 ("As stated in Equation [1] above, if the time to compress, transmit, and decompress a data packet is less than the time to transmit the data in original format, then the delivery of the data is said to be accelerated."); *cf. Synopsys*, 839 F.3d at 1146 ("analyzing information by steps people [can] go through in their minds, or by mathematical algorithms, ... [are] mental processes within the abstract-idea category").

[66] *In re TLI Commc'ns*, 823 F.3d at 614.

[67] '751 patent at 8:4-17, 8:23-29.

"encoders" used for compression were concededly well-known as of the patent's priority date.[68] The specification explains that the claimed steps can be implemented on any combination of "hardware, software, [or] firmware."[69] The claimed storing step can presumably be on "any memory or storage device" according to the specification.[70] And there is nothing inventive or unconventional in the order or arrangement of the claimed steps.

The independent claims of the '751 patent add the limitation that compression be performed using "a state machine." But as the specification acknowledges, a state machine is merely one kind of conventional processing hardware—known in the art as a processor that proceeds through a series of states.[71] State machines also were used in the well-known compression algorithms mentioned in the patent—such as in Huffman or Arithmetic encoding.[72] There is nothing unconventional or inventive in the inclusion of a state machine in the claims.[73]

Finally, the "less than the time" limitation of the claims is just a bare statement of desired result. Without details about how and why, the limitation is no more useful or inventive than the statement "wherein the car takes less time to arrive than the truck." The patent specification

---

[68] *Id.* at 15:23-32.

[69] *Id.* at 8:4-6.

[70] *Id.* at 7:19-21; *see also id.* at 8:9-10 (conventional "random access memory (RAM)").

[71] *Id.* at 8:10-17 ("The computer platform may also include an operating system, microinstruction code, and dedicated processing hardware utilizing combinatorial logic or finite state machines.").

[72] *Id.* at 9:6-10.

[73] While this term may not be often used outside of the computer sciences, it is a basic concept within those sciences. For example, a dictionary cited in the '728 patent at page 26 defines "finite state machine" as nothing more than: "in automata theory, a device with a finite number of distinguishable internal states or configurations." *See* Lauridsen Decl. Ex. B (Academic Press Dictionary of Science and Technology (1992)) at 831.

provides an equation for determining **when** the desired "acceleration" result has been achieved but says nothing about **how** to achieve it—highlighting the abstract nature of the claims.[74]

### 3. The '751 patent's non-identified claims are ineligible under § 101.

As above, even if the Court were to comb through all of the claims not identified by Realtime in its First Amended Complaint, none satisfy § 101. These claims all recite only desired results[75] and/or the use of conventional computer components and techniques that are not inventive, and indeed are largely left out of the specification.[76] None of this is sufficient to render the claims patent-eligible for all the same reasons discussed above.[77]

### C. The '908 and '530 patents lack patent-eligible subject matter.

The '908 and '530 patents are siblings with similar specifications. Both patents purport to be about using compression to speed the storage and retrieval of data.[78] Representative claim

---

[74] '751 patent at 7:1-14.

[75] *See, e.g.,* '751 patent at 25:19-24, 27:1-6 (claims 24 and 48, including a "transmitting" step in the "less than the time" result-based limitation of the independent claims); *id.* at 24:41-45, 26:23-27 (claims 14 and 38, claiming selectively storing data blocks in state machines based on "a priori knowledge" of the data, but without reciting any technique for doing so); *id.* at 24:53-57, 26:34-39 (claims 16 and 40, claiming storing data in state machines so that the data is available to encode other blocks, but without reciting how to accomplish this desired result); *id.* at 25:11-14, 26:60-64 (claims 22 and 46, claiming the use of a "default lossless encoder" when the system is unable to achieve the desired result of identifying a parameter of the data block).

[76] *See, e.g.,* '751 patent at 23:58-61, 25:40-44 (claims 2 and 26, claiming the well-known technique of transmitting data in packets—see *id.* at 3:58-59: "data is often segregated into packets for transmission"); *id.* at 23:62:24:30, 25:45-26:14 (claims 3 through 11, and 27 through 35, claiming the use of well-known packet transmission protocols UDP or TCP/IP, along with known features of those protocols that are not otherwise detailed in the specification, such as sequences and synchronization points); *id.* at 24:31-52, 24:65-25:8, 26:15-33, 26:48-57 (claims 12, 13, 15, and 19-20, as well as 36, 37, 39, and 43-44, claiming resetting the state machines at various points, the reasons for which are not otherwise detailed in the specification); *id.* at 24:58-64, 26:40-47 (claims 17-18 and 41-42, claiming well known "fixed table" and "adaptive table" structures for accomplishing "Huffman or Arithmetic" encoding, see *id.* at 11:33-36); *id.* at 25:9-10, 26:58-59 (claims 21 and 45, claiming use of "lossless" data compression—which the specification makes clear was well known in the prior art, *see id.* at 15:24-29: "lossless encoding techniques currently well known within the art such as run length, Huffman, . . ."); *id.* at 25:15-17, 26:65-67 (claims 23 and 47, claiming the conventional technique of storing in a buffer).

[77] *See, e.g., Ultramercial,* 772 F.3d at 716 ("[C]onventional steps, specified at a high level of generality, [are] insufficient to supply and inventive concept.").

1 of the '908 patent claims a generic computer with a any kind of conventional "memory device" that: (i) compresses one data block with a known compression technique, (ii) compresses another data block with a second, different compression technique, and (iii) stores the blocks.[79]  Like the '751 patent, the independent claims of the '908 patent further recite an abstract temporal result as a limitation—requiring that the time it takes to compress and store the compressed blocks be less than the time it would take to store the uncompressed blocks.[80]

Similarly, representative claim 1 of the '530 patent claims a generic computer system with a conventional  memory device and "data accelerator" device that: (i) compresses a received data stream by compressing a first data block with a first data compression technique and a second data block with a second, different data compression technique, (ii) stores the compressed data stream on the memory device faster than the data stream could be stored in its original, uncompressed form, and (iii) stores data descriptors indicative of the compression techniques used to compress the first and second data blocks.[81]

1.   *Alice* **Step 1:  the '908 and '530 patents are directed to the abstract idea of compressing and storing data using more than one compression technique.**

The core concept of the '908 and '530 patents is simply using two different compression techniques—a process that people can perform with pen and paper—before storing blocks of data, when doing so would allow the data to be stored more quickly than storing it in its original, uncompressed form.  The independent claims of the '908 and '530 patent do not even contain a

---

[78] '530 patent (D.I.1-3) at Abstract; '908 patent (D.I. 1-4) at Abstract.

[79] '908 patent at 18:50-62 (claim 1).  Claim 1 is the exemplary claim of the '908 patent in the Complaint.  *See* Complaint ¶ 68.

[80] *Id.* at 18:58-62 (claim 1), 20:1-5 (claim 21), 20:32-36 (claim 25), and 20:63-67 (claim 29).

[81] '530 patent at 18:24-42 (claim 1).  Claim 1 is the exemplary claim of the '530 patent in the Complaint.  *See* Complaint ¶ 43.

data content analysis limitation, such as was present (albeit in abstract, results-centric form) in the identified claims of the '728 and '751 patents discussed above.  The claims of both patents "simply demand[] the production of the desired results … without any limitation on how to produce that result."[82]

The claimed "memory device" of claim 1 of the '908 patent and claim 1 of the '530 patent are concededly any known conventional memory,[83] and storing the data blocks is a claim limitation that has already been found abstract by courts.[84]  And once again, the actual compression techniques contemplated in the '908 and '530 patents are any known "conventional" techniques that are "suitable" for achieving the claimed result of accelerating storage, without any disclosure of why or how particular techniques may be suitable.[85]  The '908 and '530 patents thus employ precisely the sort of results-based claiming that renders data analysis computer claims abstract—that is, preemptive and ineligible for patent protection.[86]  The claims are as uninventive and abstract as "use suitable compression techniques to store data faster than it could be stored without compression."

---

[82] *Interval Licensing*, 896 F.3d at 1344-45.

[83] '908 patent at 5:39-42 ("any form of memory device[s]"); '530 patent at 12-15 (same).

[84] *See, e.g., In re TLI Commc'ns*, 823 F.3d at 611 (claim "drawn to the concept of classifying an image and storing the image based on its classification" patent ineligible); *Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known."); *TDE Petroleum*, 657 Fed. App'x at 993 (describing "storing, gathering, and analyzing" as "the most ordinary of steps in data analysis").

[85] '908 patent at 16:49-54 ("the data storage accelerator . . . employs … any conventional data compression method suitable for compressing data at a rate necessary for obtaining accelerated data storage"); '530 patent at 16:24-28 (same); *see also* '908 patent at 11:31-36 ("It is to be understood that any conventional compression/decompression . . . may be employed in the data storage accelerator 10 and data retrieval accelerator 80 for providing accelerated data storage and retrieval in accordance with the present invention"); '530 patent at 11:40-45 ("data compression is performed by … those lossless encoding techniques currently well known in the art.").

[86] *See, e.g.  Interval Licensing,* 896 F.3d at 1344-45; *Intellectual Ventures I*, 850 F.3d at 1342; *Affinity Labs*, 838 F.3d at 1269; *see also Two-Way Media*, 874 F.3d at 1339.

2. *Alice* **Step 2:  the '908 and '530 patents do not contain an inventive concept.**

The independent claims of the '908 and '530 patents add nothing inventive to the core abstract concept of using to make data storage and retrieval faster.  The patents do not claim to have developed any specific new technology to achieve the results described in the claims.  The memory device, storing step, and indeed the compression techniques themselves, are all concededly well-known in computer systems and the prior art.[87]  As with the other patents-in-suit, these generic computer parts and processes are "insufficient to add an inventive concept to an otherwise abstract idea."[88]  And there is nothing inventive or unconventional about the ordering of the claim elements here.  Data is conventionally received before it is compressed, and compressed before it is stored.  In short, the "claims do not recite anything 'more than simply stat[ing] the [abstract idea] while adding the words apply it."[89]

3. **The '908 and '530 patents' non-identified claims are ineligible under § 101.**

The other independent and dependent claims of the '908 and '530 patent, like the exemplary claims, all recite only desired results without claiming how to achieve those results.[90]

---

[87] Claim 21 is the method claim version of representative system claim 1, and contains the same elements.  '908 patent at 19:60-20:5.  Independent claim 25 (and dependent claim 19) adds the conventional step of receiving the data blocks "over a communications channel," *see id.* at 19:55-56 and 20:22-36—which the patent does not describe other than by referring to a generic "input data stream."  *id.* at 7:40-44.  Independent claim 29 merely performs the reverse of claim 1, retrieving the blocks from storage and decompressing them with two different compression techniques.  *id.* at 20:52-21:2.

[88] *In re TLI Commc'ns*, 823 F.3d at 614.

[89] *Data Engine Techs. LLC v. Google LLC*, -- F.3d --, 2018 WL 4868029, at *10 (Fed. Cir. Oct. 9, 2018) (quoting *Alice*, 134 S. Ct. at 2357) (alterations in original).

[90] *See, e.g.,* '908 patent at 19:48-52 (claims 16 and 17, including a result-based limitation that the third compression technique be performed "in real-time," or not in "real-time," but without reciting any techniques for doing so); *id.* at 20:11-15 and 20:48-51 (claims 23 and 28, including a result-based limitation that retrieving and decompressing "occurs faster than" it would take to retrieve the block if uncompressed); *id.* at 20:37-42 (claim 26, claiming "determining" and "adjusting" bandwidth, but without reciting any techniques for doing so); '530 patent at 18:43-44

Others merely claim the use of conventional computer components and techniques that are not inventive.[91] For example, several dependent claims of the '530 patent merely require the use of a particular type of conventional storage device (magnetic, solid state, etc.).[92] Similarly, claim 8 of the '903 patent merely requires connecting the memory device "via an industry standard disk interface."[93] Many other claims in both patents merely require specific compression techniques be used from among the list of well-known compression techniques.[94] This use of known, conventional components is insufficient to render these claims inventive or non-abstract.

## VI.    CONCLUSION

For the foregoing reasons, the Court should dismiss Realtime's Complaint with prejudice.

---

(claim 2, including a result-based limitation that the "data accelerator stores said first descriptor to the memory device," but without reciting any technique for doing so); 18:48-50 (claim 4, including a result-based limitation that the "data accelerator retrieves said compressed data stream from said memory device," but without reciting any techniques for doing so).

[91] *See, e.g.,* '908 patent at 18:63-19:5 and 20:6-10, 20:43-47 (claims 2, 3, 22, and 27, claiming use of "data descriptors" or a "token" to indicate the particular compression technique used, which was described as "conventional" in the '728 patent at 2:65-3:6); '908 at 19:6-19 (claims 4-7, claiming the reverse of prior elements, retrieving the descriptors and blocks from memory and decompressing them with known techniques); *id.* at 19:33-39 (claims 12 and 13, claiming the known techniques of performing compression with encoders arranged serially or in parallel); *id.* at 19:40-42 (claim 14, adding a third block to be compressed via the known algorithms); *id.* at 19:53-54 (claim 18, conventionally reciting that the data be "audio or video," which was a well-known application for compression techniques, *see id.* at page 13, citing Millman, Howard, "Image and video compression," Computerworld, vol. 33, Issue No. 3, Jan. 18, 1999); '530 patent at 18:56-63 (claims 6-8, claiming a data accelerator connected to a memory device via "a small computer systems interface," "a fibre channel," and "a serial storage architecture").

[92] '530 patent at 18:64-19:4 (claims 9-12, claiming "magnetic," "optical," "random access" and "solid-state" memory devices); *see also id.* at 5:15-24 (confirming that each of these types of storage devices is "known within the current art").

[93] '908 patent at 19:20-22. The specification confirms that an "industry standard disk interface" is "any of the data interfaces known to those skilled in the art" at 13:22-27).

[94] *See, e.g.,* '908 patent at 19:23-32, 19:43-47, 19:57-59, 20:16-20, and 21:3-7 (claims 9-11, 15, 20, 24, and 30, claiming known compression types at 11:67-12:5); '530 patent at 19:5-8 (same).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Brian P. Egan
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com
jlyons@mnat.com

OF COUNSEL:

R. Adam Lauridsen
Matthew M. Werdegar
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400

October 17, 2018

*Attorneys for Defendants Western Digital Technologies and Western Digital Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 17, 2018, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                              *VIA ELECTRONIC MAIL*
Sara E. Bussiere, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiff*

Marc A. Fenster, Esquire                                   *VIA ELECTRONIC MAIL*
Reza Mirzaie, Esquire
Paul A. Kroeger, Esquire
C. Jay Chung, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025-1031
*Attorneys for Plaintiff*

/s/ *Brian P. Egan*
Brian P. Egan (#6227)