**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO, | |
| Plaintiff, | |
| v. | C.A. No. 1:18-cv-01267-CFC |
| TEGILE SYSTEMS, INC., WESTERN DIGITAL TECHNOLOGIES, INC., and WESTERN DIGITAL CORPORATION, | |
| Defendants. | |

**PLAINTIFF REALTIME DATA LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION (D.I. 14) TO DISMISS FOR FAILURE TO STATE A CLAIM**

October 31, 2018

OF COUNSEL:

Marc A. Fenster
Brian D. Ledahl
Reza Mirzaie
Paul A. Kroeger
C. Jay Chung
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
(310) 826-7474
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Realtime Data LLC*

## TABLE OF CONTENTS

Page(s)

I.  RELEVANT BACKGROUND ............................................................................ 1

II. DEFENDANTS FAIL TO DEMONSTRATE THAT ANY OF THE CLAIMS OF THE
    FOUR PATENTS-IN-SUIT ARE INVALID UNDER §101. ............................................. 2

    A.  Defendants Cannot Clearly And Convincingly Establish That The Patent
        Claims Are Directed To An Abstract Idea Under *Alice* Step 1. .............................2

        1. Examining the patents confirms that they claim technological solutions
           to technological problems, not abstract subject matter. ..............................3

        2. Defendants' flawed arguments mischaracterize the law and the claims. ...........7

            a. Defendants' arguments regarding the '728 Patent are flawed. ...............7

            b. Defendants' arguments regarding the '751 Patent are flawed. .............11

            c. Defendants' arguments regarding the '530/'908 Patents are
               flawed. ....................................................................................12

    B.  Defendants Also Cannot Establish That the Claims Are Patent Ineligible
        Under *Alice* Step 2. ...........................................................................14

        1. Section 101 analysis under *Alice* step 2 involves questions of fact. .............14

        2. The intrinsic record confirms that the claimed inventions involve
           unconventional technological solutions under step 2. .............................16

        3. Defendants' "remaining claims" shortcuts also fail. .............................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   -- F.3d --, 2018 WL 843288, *6 (Fed. Cir. Feb. 14, 2018). .................................................... 14

*Affinity Labs v. Amazon.com*,
   838 F.3d 1266 (Fed. Cir. 2016)............................................................................................... 10

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347, 2354 (2014)..................................................................................................... 2

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*
   841 F.3d 1288, 1293 (Fed. Cir. 2016)...................................................................................... 11

*Berkheimer v. HP Inc.*,
   -- F.3d --, 2018 WL 774096, *6 (Fed. Cir. Feb. 8, 2018) ........................................................ 14

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)............................................................................................... 10

*buySAFE v. Google, Inc.*,
   765 F. 3d 1350 (Fed. Cir. 2014)............................................................................................... 10

*Cal. Institute of Tech. v. Hughes Commcn's Inc.*,
   No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist. LEXIS 156763 (C.D. Cal Nov. 3 2014)....... 13

*Content Extraction v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014)............................................................................................... 10

*Core Wireless Licensing v. LG Elecs., Inc.*,
   --- F.3d ---, 2018 WL 542672, *4 (Fed. Cir. Jan. 25, 2018). .................................................... 4

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
   558 F. Appx. 988 (Fed. Cir. 2014)........................................................................................... 10

*Data Engine Techs. LLC v. Google LLC*,
   -- F.3d --, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018) ........................................................... 10

*DDR v. Hotels.com LP*,
   773 F.3d 1245, 1257 (Fed. Cir. 2014)....................................................................................... 4

*Digitech Image Tech. LLC v. Electronics for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014)................................................................................................. 9

*Enfish, LLC v. Microsoft Corp*,
    822 F.3d 1327, 1337 (Fed. Cir. 2016) .......................................................... 3

*Estee Lauder v. L'Oreal*,
    129 F.3d 588, 595 (Fed. Cir. 1997) ........................................................... 14

*FairWarning IP v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ................................................................. 10

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    --- F.3d ---, 2018 WL 341882, at *2 (Fed. Cir. Jan. 10, 2018). ............................ 3, 11

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016) ................................................................. 10

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ............................................................. 9, 10

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ................................................................ 10

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
    No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) ................................. 19

*McGinley v. Franklin Sports, Inc.*,
    262 F.3d 1339, 1351 (Fed. Cir. 2001) ........................................................ 14

*Realtime Data LLC v. Actian Corp. et al.*,
    Case No. 15-cv-463-RWS-JDL, Dkt. No. 184 (E.D. Tex. Nov. 30, 2015) ......................... 2

*Realtime Data LLC v. Carbonite, Inc.*,
    Case No. 17-cv-121, D.I. 70 (E.D. Tex. Sept. 20, 2017) ....................................... 1

*TDE Petroleum Data Sol., Inc. v. AKM Ent., Inc.*
    657 Fed. Appx. 991 (Fed. Cir. 2016) .......................................................... 10

*TQP Dev., LLC v. Intuit Inc.*,
    2014 WL 651935, *4 (E.D. Tex. Feb. 19, 2014) ................................................ 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329, 1337 (Fed. Cir. 2017) ......................................................... 10

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709, 714–17 (Fed. Cir. 2014) ....................................................... 10

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
    226 F. Supp. 3d 190, 192 (S.D.N.Y. 2016) ..................................................... 7

*Visual Memory LLC v. Nvidia Corp.*,
   867 F.3d 1253, 1257 (Fed. Cir. 2017)................................................................... 4, 9, 11

The claims at issue here are not abstract, but rather are limited to particularized technological solutions that improve computer capabilities—e.g., digital data compression systems to increase the capacity of a computer system to store or transfer data more efficiently. The claims describe specific ways (*e.g.*, using state machine, data accelerator, performing analysis that is not based solely on a descriptor, etc.) to make this happen. Moreover, the claims require much more than well-understood, routine, conventional activities for solving the then-existing problems in the field of digital-data compression. Indeed, the intrinsic record, including the patents' specifications, demonstrate this, which in the least raises factual issues that preclude dismissal.[1]

The asserted patents and related patents have gone through §101 scrutiny before in multiple districts. A court in Texas ruled that the asserted '728, '530, and '908 Patents are "inventive" and "directed to patent eligible subject matter" because they disclose "specific improvement[s] in computer capabilities."[2,3] And, a Massachusetts court adopted the Texas court's ruling in full. (Ex. 4.) As these rulings show, the claims are patent-eligible.

## I.    RELEVANT BACKGROUND

In a detailed, twenty-two-page opinion issued on September 20, 2017, a court in Texas ruled that the '728, '530, and '908 Patents asserted here, as well as Pat. No. 8,717,204 ('204 Patent), are patent eligible, in a Report and Recommendation by Magistrate Judge Love. (Ex. 1.) The only other patent asserted here—'the '751 Patent—is related to (and share the same specification as) the '204 Patent that the Texas court ruled were patent-eligible.

---

[1] As an example, the '728, '530, and '908 Patents were confirmed to be patentable in Final Written Decisions by the PTAB after adversarial *inter partes* reviews. (Ex. 7-9.)

[2] Ex. 1: *Realtime Data LLC v. Carbonite, Inc.*, Case No. 17-cv-121, D.I. 70 (E.D. Tex. Sept. 20, 2017), *e.g.,* at 7, 10, 15, 16, 20. All emphasis in quotes are added in this brief.

[3] The only other patent asserted in this case—the '751 Patent—is related to Pat. No. 8,717,204 held to be patent eligible by the Texas and Massachusetts courts.

On March 7, 2018, District Judge Young in Massachusetts adopted in full Judge Love's rulings "[a]fter careful consideration." (Ex. 4.) These courts held that the patents are directed to patent eligible subject matter, and that they are also inventive. In addition, two judges in Texas also denied other §101 motions involving two of the three patent families at issue here.[4]

## II.    DEFENDANTS FAIL TO DEMONSTRATE THAT ANY OF THE CLAIMS OF THE FOUR PATENTS-IN-SUIT ARE INVALID UNDER §101.

Under 35 U.S.C. §101, patent eligibility is to be construed broadly, and the exceptions are narrow. One exception is the "abstract idea" exception. The Supreme Court has warned against interpreting the exception too broadly, as that could could "swallow all of patent law" because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

### A.    Defendants Cannot Clearly And Convincingly Establish That The Patent Claims Are Directed To An Abstract Idea Under *Alice* Step 1.

The threshold inquiry of the §101 analysis requires Defendants to demonstrate that the patent claims are directed to an "abstract idea," *i.e.*, an "idea of itself" or "fundamental truths or fundamental principles the patenting of which would pre-empt the use of basic tools of scientific and technological work." *Alice*, 134 S. Ct. at 2355. Defendants fail to do so here. Under any fair characterization, the claims here are patent-eligible because they provide particular, technical solutions to technical problems specific to compression of digital computer

---

[4] In one, Magistrate Judge Love held that "an assessment of the claims at issues—by a careful reading of the claims themselves—does not clearly reveal that the patents are abstract." (Ex. 2.) In the other, District Judge Schroeder adopted this ruling and further held that under Realtime's view, namely, that the claims are directed to the compression of digital data, the argument that the patents are directed to an abstract idea "would fail" because the patents "provide technological solutions to problems arising specifically in the realm of computer technology." (Ex. 3.) *Realtime Data LLC v. Actian Corp. et al.* (E.D. Tex. Case No. 15-cv-463) involved the '530 and '908 Patents asserted in this case, as well as Pat. Nos. 7,378,992 and 8,643,513, which are related to (and share identical written description with) the '728 Patent asserted here.

data.

### 1.   Examining the patents confirms that they claim technological solutions to technological problems, not abstract subject matter.

Under the Supreme Court's *Alice* framework, claims that "improve[] an existing technological process" or "solve a technological problem in 'conventional industry practice'" are patent eligible. *Alice*, 134 S. Ct. at 2358. The Federal Circuit has applied these standards in several controlling cases to uphold the patentability of claims challenged as abstract.

In *Finjan*, the Federal Circuit held eligible a patent for identifying suspicious computer virus. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303-06 (Fed. Cir. 2018). Finjan's claim recited only three steps: (a) "receiving" computer program; (2) "generating … security profile that identifies suspicious code;" and (3) "linking" the security profile to the computer program. *Id.* The claim did not specify *how* to "identif[y] suspicious code." *Id.* at 1303. While acknowledging that prior Federal Circuit precedent has held that "virus screening," by itself, is an abstract idea, the court nevertheless held that Finjan's patent claim was not abstract because it was not directed to just any "virus screening," but instead limited to a particular type of virus screening, which constituted improvement in computer functionality. In so holding, the court rejected the same argument advanced by Haivision here, namely, that the claims "do not sufficiently describe how to implement" any idea. *Id.* at 1305. On this point, the court held that the three recited claimed steps were all that was needed to render the claim patent-eligible. *Id*.

In *Enfish*, the Federal Circuit reversed an ineligibility ruling on a database patent, which the district court described as being directed to "storing, organizing, and retrieving memory in a logical table." *Enfish, LLC v. Microsoft Corp*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). The Federal Circuit held that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Id.* It

further criticized the district court's analysis for "downplay[ing] the invention's benefits" disclosed in the specification. *Id.* at 1337–38. Because the claims were "**designed to improve the way a computer stores and retrieves data in memory**," they were "directed to a specific implementation of a solution to a problem in the software arts" and, thus, "not directed to an abstract idea." *Id.* at 1339.[5]

In *Visual Memory*, the claims recited "memory" and "processor" with "operational characteristics" which "determines a type of data." *Visual Memory LLC v. Nvidia*, 867 F.3d 1253, 1257 (Fed. Cir. 2017). Here, the court rejected defendant's argument that the claims "are directed to no more than a desired result" or that the patent claims "nothing more than a black box." *Id.* at 1260-61. The court cautioned against over-simplifying the claims, and held that they were directed to "improvements to computer functionality" as opposed to "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1258-1261.

In *Core Wireless*, the Federal Circuit affirmed eligibility of a patent about summarizing and presenting information in electronic devices. *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018). In so doing, the court rejected defendants' failure to acknowledge key claim elements and cautioned that courts "must be mindful that all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 1361. It held that the patent claimed "an improvement in the functioning of computers" (*id.* at 1363) because the claims were limited "to a ***particular*** manner of

---

[5] Similarly, in *DDR*, the claims addressed "the problem of retaining website visitors." *DDR v. Hotels.com LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Despite being directed to e-commerce, the court held that these claims "stand apart" from abstract claims "because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.* Instead, "the claims recite[d] an invention that is not merely the routine or conventional use of the Internet." *Id.* at 1259. Thus, they were eligible because the patented claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*

summarizing and presenting information in electronic devices." *Id.* at 1362. As in *Core Wireless*, the patents at issue here claim particular manners of selecting and compressing digital data to improve the capacity of a computer system to store more data or to transfer data more efficiently.

As in *Finjan, Enfish, DDR*, *Visual Memory*, and *Core Wireless*, the claimed inventions here provide particular technological solutions to overcome technological problems specific to the field of digital-data compression. The patents themselves state they are directed to problems unique to the realm of digital data, a form of data "not easily recognizable to humans in native form." (*E.g.*, '908 Patent at 1:22-56; '728 Patent at 1:52–67.) In this realm, the patents describe particular combinations of steps or structural computer components to help improve detection and exploitation of redundancies, for example, in the incoming strings of computer "1s" and "0s."

The patents teach specific improvements to the function of the computer parts themselves, such as computer memory and computer-data storage and retrieval mechanisms. For example, the '728 Patent describes various problems in the conventional art, including the "content sensitive behavior" of various compression techniques and the "extremely large number of application programs" and data types or content. (*E.g.*, '728 Patent at 2:29-3:19.) The '728 Patent solved these problems by providing systems utilizing two digital-data compression techniques (e.g., content dependent and content independent) to compress/decompress data blocks based on analysis of the specific content of data. And the patents overcame the issue of relying solely on a descriptor (e.g., file extensions such as ".doc," ".txt," etc.) by requiring a direct examination of the digital-data payload rather than examining just the descriptor. (*E.g.,* '728 Patent claim 1.) The '530 and '908 Patents solved problems in the conventional digital data compression arts by providing systems utilizing *two different* encoders. (*E.g.,* '908 Patent claim

1.) And the '751 Patent solved problems in the conventional digital-data compression by utilizing a state machine to compress data blocks based on an analysis of the specific content of the data being encoded. (*E.g.,* '751 Patent claim 1.) The claimed solutions are not abstract. They are necessarily rooted in computer technology and aimed at solving limitations in then-existing digital-data compression.

In fact, applying the Federal Circuit's analysis, Realtime's patents present a clearer case of subject-matter eligibility than those held eligible in *DDR*. In that case, after analyzing the claims, which were directed to the "look and feel" of websites, the court held that, although "the [asserted] claims do not recite an invention as technologically complex as an improved, particularized method of **digital data compression**," they were nonetheless patent eligible. 773 F.3d at 1259. The claims here thus present precisely the type of invention the Federal Circuit recognized as unquestionably patent eligible—particularized systems and methods of digital data compression.

Indeed, applying the Supreme Court and Federal Circuit precedents, courts in Texas and Massachusetts have held that these same and related patents are §101 eligible. (Ex. 1-4.) For instance, a Texas court ruled that the '728, '530, and '908 Patents asserted here, as well as Pat. No. 8,717,204 ('204 Patent), are patent eligible, in a Report and Recommendation by Magistrate Judge Love. (Ex. 1.) Then, Judge Love's rulings were adopted in full "[a]fter careful consideration" by District Judge Young in Massachusetts after that case was transferred there. (Ex. 4.) The only other asserted patent (i.e., the '751 Patent) is related to (and share the same specification as) the '204 Patent that the Texas and Massachusetts courts ruled were patent-eligible. These courts rejected the same arguments advanced by Defendants here, including arguments about "generic components" (*e.g.,* Ex. 1 at 9, 11, 15, 17) or about claims purportedly

reciting "only desired results" (*e.g., id.* at 12, 17, 20, 21). The courts held that the patents are eligible and inventive. (*Id.*)[6]

### 2.    Defendants' flawed arguments mischaracterize the law and the claims.

#### a.    Defendants' arguments regarding the '728 Patent are flawed.

##### i.    Defendants mischaracterizes the claims.

Defendants oversimplify the claims in arguing that the '728 Patent is directed to "analyzing data and processing data based on the analysis" (Mot. at 6) which it claims are "methods for manipulating data that 'humans have always performed'" (*Id.*) As the Federal Circuit has repeatedly cautioned, "describing the claims at [] a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Enfish*, 822 F.3d at 1337. Defendants pursue the very reductionism that courts caution against. *Id.*[7] Defendants' mis-framing of the patented inventions is contradicted by the patent specifications and the claims, which make clear the claims are directed to particular digital-data compression systems. Indeed, even the key, summary-form aspects of the inventions are directed to technological solutions: systems of digital data compression/decompression utilizing two encoders (e.g., content dependent and content independent) to compress/decompress data blocks based on an analysis of the specific content of the data.

In arguing that "humans have always performed" the patented inventions (Mot. at 6) or that the claims are purportedly "silent as to ***how*** to achieve" anything (Mot. at 8), Defendants ignore key aspects of the various claims, including, e.g., (1) "content dependent data

---

[6] In addition to these rulings, two judges in Texas also denied two other §101 motions involving two of the three patent families at issue here. (*See* Ex. 2, 3; *supra* §I, fn.4.) Defendants entirely ignore these rulings that contradict their §101 arguments.

[7] *Verint Sys. Inc. v. Red Box Recorders Ltd.,* 226 F. Supp. 3d 190, 192 (S.D.N.Y. 2016) ("Many recent motions seeking determinations of patent ineligibility suffer from such reductionist simplicity—from characterizing as simply a mousetrap that which is in fact a better mousetrap. Courts faced with such motions must scrutinize reductive descriptions with great care.").

compression encoders," (2) "single data compression encoder," (3) "processor … configured" as recited, (4) "identify … parameters or attributes of the data," (5) analysis that "excludes analyzing based solely on a descriptor," among others. *E.g.,* '728 Patent claim 1. Using literary "abbreviations" or "scientific notation" (Mot. at 7) is not the same as "compression," much less the same as the particularized digital data compression claimed in the asserted patents. Defendants' far-fetched argument that "humans have always performed" the claimed inventions or that "people can and do" (Mot. at 7) what is claimed fails.

Defendants' assertion that the '728 Patent does not "improve[] the functioning of the computer itself" or merely "implement[] an old practice in a new environment" (Mot. at 8) is incorrect. The patents claim specific improvement in computer capabilities—e.g., improving the ability to more effectively compress digital data so as to increase the capacity of a computer system to store more data or to transfer data more efficiently.[8] That is not an old practice implemented in a computer environment. Rather, the patented inventions are technological solutions to technological problems.

### ii.    Defendants mischaracterize the applicable law.

Defendants' arguments are premised on its sweeping and incorrect generalization that patents that are about "information analysis and processing" are all abstract (Mot. at 6-9). For example, the patents disclose compression techniques such as Lempel-Ziv, Huffman coding, data compaction, and data null suppression (*e.g.,* '728 Patent at 12:56-60), and, according to Defendants, all such compression techniques "mentioned in the patent" are patent ineligible and "nothing more than abstract mathematical steps applied to binary numbers" (Mot. at 7-8).[9]

---

[8] Indeed, the Texas and Massachusetts courts expressly held as such. Ex. 1 at 7 ("The '728 Patent is directed to patent eligible subject matter because it discloses a specific improvement in computer capabilities"); Ex. 4.

[9] Defendants' citations to extrinsic publications (e.g., Mot. at fn.33 and fn.73) are improper in a

Defendants' argument contravenes §101 legal standard.

As the Federal Circuit in *Finjan*, *Enfish*, and *Visual Memory* explained, the law draws a line of distinction between patent claims in which "computers are invoked merely as a tool" (which may be patent ineligible) and patent claims that provide technological solutions to technological problems (e.g., "improvement in computer capabilities," which are patent eligible). *Enfish*, 822 F.3d at 1335-36; *Visual Memory*, 867 F.3d at 1258-59.[10]

Applying that law here requires rejection of Defendants' argument. Although Defendants seek to blur and dramatically expand the boundaries of what is "abstract," here, it is not the mere fact that the asserted patents are in the digital domain that is relevant; rather, it is the fact that the problems that gave rise to Realtime's inventions are rooted in digital computer technologies, and also that the solutions provided in Realtime's inventions are improvements on the computer capabilities—e.g., increasing the capacity of a computer system to store more data or to transfer data more efficiently. Indeed, the claims at issue here are more clearly about technological solutions to technological problems than the claims held patent-eligible in *Finjan*, which involved a software patent that claimed "receiving" a computer program, "generating" a "security profile that identifies suspicious code," and "linking" the security profile to the computer program. *Finjan*, 879 F.3d at 1303.

The cases Defendants cite are inapposite. For example, *RecogniCorp, LLC v. Nintendo Co.* involved an invention that "**does not even require a computer; the invention can be**

---

motion to dismiss. And in any event, they raise factual issues, precluding dismissal here.

[10] *See also McRO*, 837 F.3d at 1315 (rejecting argument that inventions "simply use a computer as a tool" and holding patents eligible because claims "focused on a specific asserted improvement in computer animation, *i.e.*, the automatic use of rules of a particular type."); *DDR*, 773 F.3d at 1257 (holding that patent is eligible because it "is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."); *Alice*, 134 S. Ct. at 2358 (patent eligible if it "improved an existing technological process").

**practiced verbally**." 855 F.3d 1322, 1328 (Fed. Cir. 2017). The claim in *RecogniCorp* was akin to "Paul Revere's 'one if by land, two if by sea' signaling system." *Id.* at 1326. In contrast, the claims at issue here require a computer and cannot be "practiced verbally"; instead, they are directed to technological improvements in digital-data compression. *Digitech Image Tech. LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) involved a patent that claimed "signals" that were transitory and "**ethereal**" (*id.* at 1349-50) or a mathematical **formula**. In *Electric Power*, the court held ineligible a claim directed to the abstract idea of collecting and displaying information limited to field of power grids, where those claims were "mental process." 830 F.3d at 1356.[11] The claims at issue here are nothing like the claims at issue in the

---

[11] Other cases cited by Defendants are similarly inapposite. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017) involved a case where computer was used merely as a tool, i.e. to "restrict the invention's field of use." 850 F.3d at 1340. Moreover, *Intellectual Ventures* involved organizing data that was "**human**- and machine-readable." *Id.* at 1338. In contrast, data at issue in the asserted patents are digital data—i.e., data that is "**not easily recognizable to humans**." '728 Patent at 1:52-54; *see also, e.g., In re TLI*, 823 F.3d 607 (Fed. Cir. 2016) (claims directed to the idea of classifying and storing images in an organized manner, which is merely a method of "organizing human activity"); *Cyberfone Sys., LLC v. CNN Interactive Grp.*, 558 F. Appx. 988, 992 (Fed. Cir. 2014) ("collecting information in classified form, then separating and transmitting that information according to its classification"); *Content Extraction v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) (claims directed to processing "hard copy documents"); *TDE Petroleum Data Sol., Inc. v. AKM Ent., Inc.* 657 Fed. Appx. 991 (Fed. Cir. 2016) (claims directed to gathering and processing data about a "well operation"); *Two-Way Media Ltd. v. Comcast Cable Comm., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claims directed to "sending," "directing," and "monitoring" information); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) ("the claim here is 'not directed to a specific improvement to computer functionality. Rather, [it is] directed to the use of conventional or generic technology in a nascent but well-known environment," i.e., email screening); *Affinity Labs v. Amazon.com*, 838 F.3d 1266 (Fed. Cir. 2016) (claims directed to delivering music content); *buySAFE v. Google, Inc.*, 765 F. 3d 1350, 1355 (Fed. Cir. 2014) ("creating a contractual relationship—a 'transaction performance guaranty'"); *FairWarning IP v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) (patent about "detecting improper access of a patient's protected health information"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–17 (Fed. Cir. 2014) (claims applying exchange of advertising for copyrighted content to the Internet); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) (patents about "considering historical usage information while inputting data"); *Data Engine Techs. LLC v. Google LLC*, -- F.3d --, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018) (holding that most of the asserted patents

cases cited by Defendants—e.g., the asserted patents do not claim laws of nature, mathematical formula, ethereal signals, mental process, contractual relationships, or any other abstract idea.

### b.  Defendants' arguments regarding the '751 Patent are flawed.

Defendants make similar, faulty arguments regarding the '751 Patent, and they fail for the reasons set forth above for the '728 Patent. Defendants argue that the claims "merely recite results" (Mot. at 13). That argument has been rejected. In *Amdocs*, the district court held that patent claims reciting various functions such as "collecting," "storing," and "outputting" data were ineligible under §101. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.* 841 F.3d 1288, 1293 (Fed. Cir. 2016). Applying Supreme Court precedent, the Federal Circuit reversed. After analyzing the patent specification, it held that the claims were not abstract and therefore were patent-eligible because they provided a technological solution to a technological problem, namely, "massive record flows." *Id.* In so doing, the court rejected the argument Defendants now make. After discussing past §101 precedent in great detail, the court stated:

> "[t]he dissent offers a different paradigm for identifying an abstract idea … that a desired goal (i.e. result or effect), absent structural or procedural means for achieving that goal, is an abstract idea... We commend the dissent for seeking a creative way of incorporating aspects of well-known doctrine [in other areas of patent law] in the search for what is an 'abstract idea,' **but that it not now the law, either in statute or court decision**." *Id.*

The "result-based" argument was similarly rejected in *Visual Memory*, 867 F.3d at 1260-61, and *Finjan*, 879 F.3d at 1305. For instance, *Finjan* involved a patent that claimed "identif[ying] suspicious code" without specifying how such identification was done. *Id.* at 1303. The Federal Circuit nevertheless rejected defendant's argument that the claims at issue "do not sufficiently describe how to implement that idea." *Id.* at 1305-06. And the Texas and Massachusetts courts rejected this argument for the asserted and related patents. (Ex. 1 at, *e.g.,* 12, 15-17, 20, 21; Ex.

---

were patent eligible, while ruling that one of the patents was ineligible because it covered "any means" for identifying spreadsheet page).

4.)

Defendants' argument also ignores the actual character of the claims, as they amply provide details regarding how results are achieved. For example, claim 1 of the '751 Patent describes "analyzing content … that excludes analyzing based solely on reading a descriptor," "selecting an encoder associated with the identified parameter…," and "utilizing a state machine,"[12] among other details. In other words, the claims provide specific structures and specific ways to perform the functionalities. Defendants' argument fails legally and factually.

      c.      **Defendants' arguments regarding the '530/'908 Patents are flawed.**

Defendants' arguments regarding the '530 and '908 Patents merely recycle their arguments regarding the other patents in a perfunctory manner (Mot. at 17-19). That is a far cry from meeting their burden by clear and convincing evidence. Defendants' argument fails for the same reasons as set forth above for the '728 and '751 Patents.

Defendants' assertion that the '530/'908 Patents claim "a process that people can perform with pen and paper" (*id.*) ignores the actual limitations of the claims, including, e.g., "memory device," "data accelerator," "provid[ing] a first compressed data block," two different compression techniques, use of a "descriptor," among others. Moreover, courts have held the "pen and paper" arguments inapplicable and unhelpful. For example, the Federal Circuit Judge Bryson, sitting by designation, held patent claim to be eligible where the claims "involve[d] a several-step manipulation of data that, except perhaps in its most simplistic form, could not conceivably be performed in the human mind or with pencil and paper." *TQP Dev., LLC v. Intuit Inc.,* 2014 WL 651935, at *4 (E.D. Tex. Feb. 19, 2014). Similarly, the claimed digital data

---

[12] Defendants point to dictionary definitions (Mot. at 15, fn.73) to argue that a "state machine" is purportedly "conventional." As an initial matter, the dictionaries are extrinsic publication improper to consider here. And in any event, the relevant issue here is not whether "state machine" *in isolation* is conventional. Defendants provide nothing other than *ipse dixit* to support any argument that the ***combination*** of elements as recited in the claims are conventional.

compression techniques "could not conceivably be performed in the human mind or with pencil and paper." *Id.* An ordinary system of digital data compression, let alone the particular patented inventions here, would be impossible to perform in the human mind or by pencil and paper.[13] This is why courts have held that this analysis is "unhelpful for computer inventions" and "mislead[s] courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer." *Cal. Institute of Tech. v. Hughes Commcn's Inc.*, 59 F. Supp. 3d 974, 994-995 (C.D. Cal. Nov. 3 2014). In short, Defendants' arguments are misplaced. Indeed, the patents themselves refute Defendants' flawed argument: "**digital data** is … **not easily recognizable to humans** in its native form." '908 Patent at 1:35-37.

Defendants' argument regarding "result-based" claiming is legally flawed (as explained above), and is also factually erroneous. For example, '530 Patent claim 1 provides limitations that teach how the invention works; it recites a "data accelerator" that is configured as claimed and coupled to a memory device, the data accelerator having the capability to use two different compression techniques and using "data descriptors" that is indicative of a compression technique. Indeed, Defendants' arguments were considered and rejected by the Texas and Massachusetts courts in denying §101 motion on the '530 and '908 Patents. Ex. 1 at 16 ("The patents set out specified rules to lead to this result and move them past an over-simplified result-oriented patent."); *see also* Ex. 4.

In sum, the asserted claims can only be read as providing technological improvements and solutions specific to digital data compression and are not abstract. At the very least, this Court must accept all the allegations of the complaint and descriptions of the claimed inventions

---

[13] Notably, a defendant in the related *Commvault* case did not even make the far-fetched "pen and paper" or "human mind" argument. *See* DE Case No. 17-cv-925, D.I. 14 at 1-20.

from the intrinsic record as true, and drawing all reasonable inferences in favor of Realtime, deny Defendants' motion. As others have held, the asserted patents are not abstract. (Ex. 1-4.)

**B.   Defendants Also Cannot Establish That the Claims Are Patent Ineligible Under *Alice* Step 2.**

Because Defendants cannot meet their burden under step 1, the inquiry ends there and step 2 need not be addressed. But in any event, Defendants also cannot meet their burden under step 2.

**1.   Section 101 analysis under *Alice* step 2 involves questions of fact.**

Step 2 requires examination of the claim elements "both individually and 'as an ordered combination.'" *Alice*, 134 S. Ct. at 2355. Defendants cannot prevail on this step simply by showing that individual claim elements are "known in the art." *Bascom*, 827 F.3d at 1349–50. Indeed, "[t]he genius of invention is often a combination of known elements which in hindsight seems preordained." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001). Defendants' arguments focus solely on individual elements and not as an ordered combination. This is fatal to its motion. Moreover, "that something is disclosed in a piece of prior art ***does not mean it was well- understood, routine, and conventional***." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Defendants provide nothing more than attorney arguments in its assertion that some individual elements are purportedly not "inventive."[14]

The Federal Circuit in *Berkheimer* confirmed that any *Alice* step 2 analysis involves underlying factual questions. *Id.* at 1368-69. Specifically, the court clarified that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is ***a question of fact*** … [which] must be

---

[14] *See, e.g., Estee Lauder v. L'Oreal*, 129 F.3d 588, 595 (Fed. Cir. 1997) ("Arguments of counsel cannot take the place of evidence lacking in the record.").

proven by ***clear and convincing evidence***." *Id.* After reviewing the intrinsic record in the case, the court held that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Id.* Accordingly, the district court there committed legal error in granting summary judgment despite this factual dispute. *Id.*

In *Aatrix Software*, the Federal Circuit applied these principles to vacate a district court's §101 ruling pursuant to a Rule 12 motion. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018). Buttressing its precedent in *Berkheimer*, the court held that "patent eligibility can be determined at the Rule 12(b)(6) stage … ***only when*** there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at 1125. Moreover, the court explained that "sources properly considered on a motion to dismiss [include] the complaint, the patent, and materials subject to judicial notice." *Id.* at 1128. The court then reviewed these sources and held that the district court erred in granting the motion to dismiss because plaintiff's "allegations at a minimum raise factual disputes underlying the §101 analysis, such as whether the claim term 'data file' constitutes an inventive concept, alone or in combination with other elements." *Id.* at 1126.

The *Aatrix* court did not end its analysis there. In the first decision of its kind in the §101 context, the court applied well established Rule 12(b)(6) principles and also found that the district court abused its discretion when it denied leave to file an amended complaint. In remanding, the court then expressly allowed the amended complaint, holding that, "[v]iewed in favor of [plaintiff], as the district court must at the Rule 12(b)(6) stage, the complaint alleges that the claimed combination improves the functioning and operation of the computer itself. These allegations, if accepted as true, contradict the district court's conclusion that the claimed

combination was conventional or routine." *Id.* at 1127-28; *id.* at 1126 ("[A]t that stage there certainly were allegations of fact that, if [plaintiff's] position were accepted, would preclude the dismissal.").

> **2.**     **The intrinsic record confirms that the claimed inventions involve unconventional technological solutions under step 2.**

The '728 Patent address the prior art problems, including: "their content sensitive behavior...often referred to as data dependency"; "significant variations in the compression ratio obtained when using a single lossless data compression technique for data streams having different data content and data size"; "extremely large number of application programs, some of which do not possess published or documented file formats, data structures, or data type descriptors"; "rate at which new application programs are developed and the need to update file format data descriptions." ('728 Patent at 2:7–3:55.) To solve these technological issues, the '728 Patent claims required an unconventional combination of elements. For example, '728 Patent claim 1 required: (a) "content dependent data compression encoders"; (b) a different "single data compression encoder"; (c) a processor configured to (d) "analyze data within a data block to identify one or more parameters or attributes of the data"; (e) "the analyzing ... excludes analyzing based solely on a descriptor"; (f) "to perform content dependent data compression ... if the one or more parameters or attributes of the data are identified"; and (g) otherwise "to perform data compression with the single data compression encoder."

The '530/'908 Patents address problems in digital-data compression, including: "high performance disk interface standards … offer only the promise of higher data transfer rates through intermediate data buffering in random access memory"; "[f]aster disk access data rates are only achieved by the high cost solution of simultaneously accessing multiple disk drives with a technique known within the art as data striping"; "problems with bandwidth limitations … by

all other forms of sequential, pseudorandom, and random access mass storage devices." ('908 Patent at 2:20–54.) To address these, the claims require unconventional combination of elements, *e.g.*: (a) "a data accelerator" with two different compression techniques; (b) "a memory device"; (c) where the accelerator is configured to compress two data blocks; (d) including "a first data block with a first compression technique"; and (e) a "second data block with a second [and different] compression technique." (*Id.* 18:50-62.) The accelerator is unconventional, as it requires two different compression techniques and the structural capability of compressing and storing digital data faster than the digital data can be stored in uncompressed form.

The '751 Patent addresses specific problems in the prior art, including: "latency induced by the act of encryption, compression, decryption, and decompression"; "substantial latency caused by aggregating data packets due to poor data compression efficiency and packet overhead"; capacity transmission limitations using existing T1 lines; "[t]he limitation of highly significant bandwidth and/or long delays with co-location processing and long latency times." ('751 Patent at 1:40–5:22.) The '751 Patent solves these problems by an unconventional compression system to provide a multiplication of bandwidth and a reduction in transmission latency. (*Id.* at 5:28–29, 6:13–19.) Claim 1 requires, e.g.,: (a) "identif[ying] a parameter, attribute, or value of the data block," (b) analysis "that excludes analyzing based solely on reading a descriptor," (c) "selecting an encoder associated with the identified parameter, attribute, or value"; (c) "compressing data … with the selected encoder … utilizing a state machine"; (d) "storing compressed data block"; and (e) wherein "the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form."

The novel and unconventional aspects are further confirmed by the intrinsic patent file

17

histories. For example, in granting patent issuance, the USPTO stated that the prior art does not teach the claimed inventions, including the USPTO specifically reciting the novel elements recited in the claims as reasons for allowance. (*E.g.,* Ex. 5 ('728 FH), Ex. 6 ('908 FH).)[15] The inclusion of these facts are even more compelling because "setting forth of reasons for allowance is not mandatory." MPEP §1302.14. The novelty and unconventional nature of the '728, '530, and '908 Patent are further confirmed by the fact that these patents have gone through the adversarial *inter partes* review process, after which all challenged claims were confirmed to be patentable. (Ex. 7-9.) Defendants' unsupported assertion that claims are not "inventive" is false and contradicted by the intrinsic record. The intrinsic record confirms that the claims improve computer capabilities, and that they recite unconventional solutions. At the very least, they raise factual issues on these points. Applying *Berkheimer* and *Aatrix Software*, these factual issues preclude dismissal.

In sum, the claimed inventions here do not merely recite well-understood, routine, conventional activities but, instead, are necessarily rooted in computer technology and provide a technological solution that improves computer functionality and overcome a problem specifically arising in the realm of compression of digital computer data. The patents amount to "significantly more" than simply claiming an abstract idea and are therefore patent-eligible. The asserted claims present an even clearer case of patent-eligibility than claims expressly approved by the Federal Circuit. *E.g., DDR*, 773 F.3d at 1259; *Finjan*, 879 F.3d at 1303.

In arguing that the claims lack inventive concept, Defendants pursue the same flawed analysis rejected by the Federal Circuit, as well as by the Texas and Massachusetts courts in

---

[15] Realtime respectfully requests the Court to take judicial notice of the file histories of the asserted patents, as the facts are part of the public record not subject to any reasonable dispute. *See Aatrix*, 882 F.3d at 1128; Fed. R. Evid. 201(b).

ruling that the same and related patents are patent eligible. (Ex. 1-4.) Defendants assert that the patents lack inventive concept because individual claim elements purportedly recite "generic" components. But the fact that some of the individual claim limitations may be performed using known components does not render them ineligible. *Bascom*, 827 F.3d at 1350. Moreover, the claimed components are not generic. As discussed above, the processor recited in claim 1 of the '728 patent must be specially configured to perform the recited, non-conventional functions, including analyzing the data to identify one or more parameters or attributes and performing compression with a plurality of different encoders based on that analysis. Furthermore, Defendants' arguments fail to consider the claims as a whole. For example, Defendants fail to discuss, e.g., "descriptor …indicative of first compression technique," "excludes analyzing based solely on a descriptor," among others. At best, Defendants' arguments are based on sheer attorney argument, which is insufficient to meet its burden. Defendants' failure to examine even one asserted claim as a whole is fatal to its motion. The claims recite specific, discrete implementations of digital data compression, and the recited claim elements "operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs*, 841 F.3d at 1300–01. Indeed, the Court "must take the specification's statements about the purported invention to be true," and is "not free to accept [defendant's] contrary attorney argument" that the claims are directed to conventional means.[16] At the very least, factual issues compel denial of the motion.[17]

### 3.    Defendants' "remaining claims" shortcuts also fail.

Defendants' motion should be denied also because it provides no clear and convincing

---

[16] *MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 5661981, *5 (D. Del. Sept. 29, 2016); *Bascom*, 827 F.3d at 1352 (patents and facts are "construed in favor of [the patentee]").

[17] Should the Court be inclined to grant dismissal, Realtime respectfully requests that dismissal be without prejudice to amending the complaint because "there certainly [are] allegations of fact that, if … accepted, would preclude the dismissal." *Aatrix*, 882 F.3d at 1126.

evidence that *all* of the claims of the asserted patents (totaling 129 claims) are ineligible. Defendants merely provide conclusory attorney arguments asserting that some claims are "analogous" to a couple of the claims that it had mentioned (*see* Mot. at 11, 16, 19). That is neither clear nor convincing evidence. Defendants' citation to *Content Extraction* (Mot. at 11) does not help meet its burden. Moreover, *Content Extraction* is inapposite because the plaintiff there "never asserted in its opposition to [defendant's] motion that the district court should have differentiated any claim from those identified as representative" 776 F.3d at 1348.

For some other claims, Defendants merely isolate certain limitations to argue that they purportedly merely claim "results" or are "conventional" (Mot. at 11, 16, 19). Defendants' argument fails for the same reason as set forth above, e.g., Defendants ignore the actual limitations set forth in the claims. *McRO*, 837 F.3d at 1313; *Bascom*, 827 F.3d at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."). Defendants cannot show that all 129 patent claims are ineligible under any standard, let alone the heightened standards on a motion to dismiss.[18]

Moreover, any reasonable interpretation of the claim language would demonstrate that the claims are limited to digital data compression and cannot be performed with pen and paper. Accordingly, claim construction would further illuminate the eligibility of the patents.

Further, "patent eligibility under §101 presents an issue of law … contain[ing] underlying factual issues." *Accenture Global Servs.*, 728 F.3d at 1340-41. In order to rule for Pure Storage, the Court will have to first resolve several disputed issues of material fact, including: (a) the core

---

[18]   The claims unaddressed by Pure Storage provide numerous other limitations and combinations, including, e.g., "data descriptors," "disk interface," "dictionary compression," "serial configuration," "real-time," "TCP/IP," "UDP Packets," "packetized data stream," "lossless" encoders, "synchronization point," "default data compression," and numerous other limitations arranged and combined in specific claimed ways. *See* '728, '751, '530, '908 claims.

aspects of the patented inventions; (b) whether the claimed inventions can be performed with pencil and paper; (c) whether the claimed inventions are merely generic or standard implementations of abstract ideas; and (d) whether all additional claim limitations are well understood, routine, or conventional. *See supra*. There will likely be subsidiary issues of fact relevant to each issue as well. Viewing these and other facts in a light most favorable to Realtime precludes any dismissal at this stage. *Bell Atl. Corp.,* 550 U.S. at 555.


October 31, 2018                              BAYARD, P.A.

OF COUNSEL:                                    /s/ Stephen B. Brauerman
                                              Stephen B. Brauerman (No. 4952)
Marc A. Fenster                               Sara E. Bussiere (No. 5725)
Brian D. Ledahl                               600 N. King Street, Suite 400
Reza Mirzaie                                  Wilmington, DE 19801
Paul A. Kroeger                               (302) 655-5000
C. Jay Chung                                  sbrauerman@bayardlaw.com
RUSS, AUGUST & KABAT                          sbussiere@bayardlaw.com
12424 Wilshire Boulevard, 12th Floor
(310) 826-7474                                *Attorneys for Plaintiff Realtime Data LLC*
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com

21