IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br><br>              Plaintiff,<br><br>     v.<br><br>TEGILE SYSTEMS, INC., WESTERN DIGITAL TECHNOLOGIES, INC., and WESTERN DIGITAL CORPORATION,<br><br>              Defendants. | C.A. No. 1:18-cv-01267-CFC |

**PLAINTIFF REALTIME DATA LLC'S ANSWERING BRIEF IN OPPOSITION TO PROJECT TAURUS'S MOTION (D.I. 25) TO DISMISS PLAINTIFF'S COMPLAINT AND JOINDER OF WESTERN DIGITAL'S MOTION TO DISMISS**

December 20, 2018

OF COUNSEL:

Marc A. Fenster
Brian D. Ledahl
Reza Mirzaie
Paul A. Kroeger
C. Jay Chung
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
(310) 826-7474
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Realtime Data LLC*

# **TABLE OF CONTENTS**

**Page(s)**

I. PROJECT TAURUS FAILS TO DEMONSTRATE THAT ANY OF THE CLAIMS OF THE ASSERTED PATENTS ARE INELIGIBLE UNDER §101. ........................................ 1

    A. Project Taurus Does Not Contest that the Claims, and the Problems the Claims Aimed to Solve, Are Limited to Digital-Data Compression—a Point that is Fatal to its Motion, under *Alice* Step 1. .............................................................1

    B. Project Taurus's Argument that the Claims Merely Recite "Result-Based Functional Language" Rather than "How" to Solve Problems Is Wrong on the Law and Facts....................................................................................................4

    C. Project Taurus Has Not and Cannot Establish that the Claims Are Patent Ineligible Under *Alice* Step 2. ......................................................................9

II. PROJECT TAURUS'S ATTEMPT TO INVALIDATE 129 CLAIMS BASED ON A CURSORY DISCUSSION OF 4 NON-REPRESENTATIVE CLAIMS FAILS. ............... 11

    B. *Berkheimer* confirms that it is inappropriate to treat all claims here as representative and that factual issues preclude a finding of invalidity in a motion to dismiss......................................................................................11

    C. The identified claims are *not* representative, and the other claims add inventive and non-abstract limitations that confirm the claims are patent-eligible under both *Alice* steps 1 and 2....................................................12

III. DEFENDANTS' CITATION TO THE REPORT AND RECOMMENDATION IN *REALTIME ADAPTIVE STREAMING LLC V. NETLFIX* (D.I. 27) IS INAPPLICABLE.. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  -- F.3d --, 2018 WL 843288, *6 (Fed. Cir. Feb. 14, 2018). ........................................................ 9

*Affinity Labs v. Amazon.com*,
  838 F.3d 1266 (Fed. Cir. 2016) ................................................................................................. 5

*Ancora Tech., Inc. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) ................................................................................................. 8

*Berkheimer v. HP Inc.*,
  -- F.3d --, 2018 WL 774096, *6 (Fed. Cir. Feb. 8, 2018) ......................................................... 9

*Estee Lauder v. L'Oreal*,
  129 F.3d 588, 595 (Fed. Cir. 1997) ........................................................................................... 9

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) ................................................................................................. 5

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
  No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) ............................................... 10

*McGinley v. Franklin Sports, Inc.*,
  262 F.3d 1339, 1351 (Fed. Cir. 2001) ....................................................................................... 9

*Realtime Data LLC v. Actian Corp. et al.*,
  Case No. 15-cv-463-RWS-JDL, Dkt. No. 184 (E.D. Tex. Nov. 30, 2015) ........................... 3, 6

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329, 1337 (Fed. Cir. 2017) ....................................................................................... 5

Defendant Project Taurus's motion to dismiss (D.I. 25) ("Mot") under §101 should be denied. Project Taurus's motion incorporates the arguments made in Defendant Western Digital's motion to dismiss and supporting brief. Thus, Plaintiff Realtime expressly incorporates its answering brief (D.I. 20) to Western Digital's motion. This opposition responds to the additional arguments contained in Project Taurus's motion.

Project Taurus's motion is more noteworthy for what it does not say than what it does say. In particular, Project Taurus does not meaningfully dispute that the patented claims here are directed to digital-data compression solutions to overcome technological problems specific to the field of digital-data compression. This alone is fatal to its motion.

Offering no real response to these salient facts, Project Taurus instead relies on sweeping oversimplification of the claims and mischaracterization of the law and Realtime's arguments. For example, Project Taurus argues that claims of the asserted patents do not recite a technological solution to a technological problem because they allegedly "do not describe *'how'* the patents overcome the identified problems with prior approaches to data compression, transfer, or storage." Mot. at 2. In making this argument, Project Taurus's arguments ignore the actual elements of the claim that does exactly that—recite how the inventions provide technological solutions, including, e.g., by using state machine, data accelerator, performing analysis that is not based solely on a descriptor, etc. At bottom, any reasonable view of the claimed inventions makes clear they are patent eligible. Project Taurus's arguments fail.

I. **PROJECT TAURUS FAILS TO DEMONSTRATE THAT ANY OF THE CLAIMS OF THE ASSERTED PATENTS ARE INELIGIBLE UNDER §101.**

    A. **Project Taurus Does Not Contest that the Claims, and the Problems the Claims Aimed to Solve, Are Limited to Digital-Data Compression—a Point that is Fatal to its Motion, under *Alice* Step 1.**

Although not its burden to carry, in Realtime's Opposition (D.I. 20) to Western Digital's

1

motion to dismiss, Realtime demonstrated that the patented claims here are directed to digital-data compression solutions to overcome technological problems specific to the field of digital-data compression. For example, Realtime showed that the patents themselves state they are directed to problems unique to the realm of digital data, a form of computer data "**not easily recognizable to humans in native form**." (*See*, *e.g.*, D.I. 20. at 2-12; '530 patent at 1:15-55; '728 patent at 1:52–67.) In this realm, the patents describe using a combination of particular steps or the combination of multiple required structural computer elements to help improve detection and exploitation of redundancies, for example, in the incoming strings of computer "1s" and "0s." Moreover, Realtime showed that past claim constructions establish that the claimed inventions themselves likewise are limited to the methods and systems for compression of digital computer data. To provide just one dispositive example, the parties in prior related cases stipulated that the plain and ordinary meaning of the term "compression" is "representation of data **with fewer bits**." (*E.g.,* Case No. 15-cv-463-RWS-JDL (*Actian* case) at Dkt. No. 362 (July 28, 2016).) As another example, the plain meaning of the term "data block" was stipulated to be "a single unit of data," which may only "range in size from individual **bits through complete files or collection of multiple files**." (*Id.*)

      In its motion, Project Taurus does not contest these critical facts. Nor could it. Project Taurus does not, and cannot, dispute that the patents themselves state they are directed to problems unique to the realm of digital-data compression. And Project Taurus does not, and cannot, dispute that the claim constructions make clear that they are limited to digital-data compression. This is fatal to Project Taurus's motion. These salient facts confirm that the patents claim digital-data technological solutions to problems arising specifically in the realm of computer technology. Under controlling Supreme Court and Federal Circuit law, including *Enfish* and *DDR*, these claims are not abstract. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (claims

directed to "storing, organizing, and retrieving memory in a logical table" were eligible because they were "directed to a specific implementation of a solution to a problem in the software arts" and, thus, "not directed to an abstract idea."); *DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (the claims directed to the "look and feel" of websites were eligible because they were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.").

In fact, Realtime's patents present an easier and clearer case of subject-matter eligibility than those already held eligible in *DDR*. In that case, after analyzing the claimed inventions, which were directed to the "look and feel" of website displays, the court held that although "the [asserted] claims do not recite an invention as technologically complex as an improved, particularized method of '**digital-data compression**,'" they were nonetheless patent eligible under the *Alice* framework. *DDR,* 773 F.3d at 1259 (emphasis added). The claims of Realtime's asserted patents present precisely the type of invention the Federal Circuit recognized as patent eligible— particularized systems and methods of digital-data compression.

Indeed, applying the Supreme Court and Federal Circuit precedents, courts in Texas and Massachusetts have held that these same and related patents are §101 eligible. (D.I. 21 at Ex. 1-4.) For instance, a Texas court ruled that the '728, '530, and '908 Patents asserted here, as well as Pat. No. 8,717,204 ('204 Patent), are patent eligible, in a Report and Recommendation by Magistrate Judge Love. (D.I. 21 at Ex. 1.) Then, Judge Love's rulings were adopted in full "[a]fter careful consideration" by District Judge Young in Massachusetts after that case was transferred there. (D.I. 21 at Ex. 4.) The only other asserted patent (i.e., the '751 Patent) is related to (and share the same specification as) the '204 Patent that the Texas and Massachusetts courts ruled were patent-eligible. These courts rejected the same arguments advanced by Project Taurus here, including

3

argument that claims purportedly recite only "desired results" rather than "how to overcome" problems (*e.g., id.* at 12, 17, 20, 21).

In addition, two judges in Texas also denied other §101 motions involving two of the three patent families at issue here. In one, Magistrate Judge Love held that "an assessment of the claims at issues—by a careful reading of the claims themselves—does not clearly reveal that the patents are abstract." (D.I. 21 at Ex. 2.) In the other, District Judge Schroeder adopted this ruling and further held that under Realtime's view, namely, that the claims are directed to the compression of digital data, the argument that the patents are directed to an abstract idea "would fail" because the patents "provide technological solutions to problems arising specifically in the realm of computer technology." (D.I. 21 at Ex. 3.) *Realtime Data LLC v. Actian Corp. et al.* (E.D. Tex. Case No. 15-cv-463) involved the '530 and '908 Patents asserted in this case, as well as Pat. Nos. 7,378,992 and 8,643,513, which are related to (and share identical written description with) the '728 Patent asserted here. Project Taurus entirely ignores these rulings that contradict its §101 arguments.

      **B.**    **Project Taurus's Argument that the Claims Merely Recite "Result-Based Functional Language" Rather than "How" to Solve Problems Is Wrong on the Law and Facts.**

Project Taurus concedes that claims are eligible if they "recite a particular technological solution to an identified problem or an improvement to computer functionality." Mot. at 1. That is precisely what the claims of the asserted patents recite, as found in prior rulings on the asserted patents. (*E.g.,* D.I. 21, Ex. 1 at 11 ("Claim 1 of the ***'728 Patent*** is inventive because it utilizes a system and its structural elements in a way that is a ***solution*** to a computing problem."), 17 ("[T]he '***530 and '908 Patents*** create an ***unconventional solution*** that results in faster disk access and bandwidth limitations by using a memory device and a data accelerator to compresses the data stream using different compression techniques utilizing lossless data compression and decompression.")).

4

Nevertheless, Project Taurus goes on to mischaracterize the law in asserting that reciting "desired result" (Mot. at 3, 4) or "result-base functional language" (*id.*) makes the claims ineligible. The Federal Circuit has addressed—and *soundly rejected*—this false premise. In *Amdocs*, the district court held that patent claims reciting functions such as "collecting," "storing," and "outputting" data were ineligible under §101. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.* 841 F.3d 1288, 1293 (Fed. Cir. 2016). Applying Supreme Court precedent, the Federal Circuit reversed. After analyzing the patent specification, it held that the claims were not abstract and therefore were patent-eligible because they provided a technological solution to a technological problem, namely, "massive record flows." *Id*. In so doing, the court rejected the argument Project Taurus now makes. After discussing past § 101 precedent, the court stated:

> "The dissent offers a different paradigm for identifying an abstract idea … that a desired goal (i.e. result or effect'), absent structural or procedural means [in the claims] for achieving that goal, is an abstract idea. . . We commend the dissent for seeking a creative way of incorporating aspects of well-known doctrine [in other areas of patent law] in the search for what is an 'abstract idea,' **but that it not now the law, either in statute or court decision**."[1] *Id*. at 1295.

Thus, Project Taurus's argument plainly rely on the same flawed paradigm that was rejected by the Federal Circuit in *Amdocs*. It should be rejected here.[2]

Project Taurus's argument is also factually erroneous. Any reasonable reading of the claims makes clear they do not merely recite desired results. The underlying premise to Project Taurus's argument is that, even though the claims are directed to and recite technological subject matter,

---

[1] The court went further, in a footnote, to state that it made sure to state this concern and clarify the law, "lest the dissent's generalization of law may mislead the reader [because words] out of context are less useful—especially if inapt." *Id*. at n. 4.

[2] Cases cited by Project Taurus are inapposite. For example, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018) involved a patent that claimed an "attention manager" that was akin to "the nontechnical human activity of passing a note to a person." 896 F.3d at 1344. *See also Two-Way Media Ltd. v. Comcast Cable Comm., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claims directed to "sending," "directing," and "monitoring" information); *Affinity Labs v. Amazon.com*, 838 F.3d 1266 (Fed. Cir. 2016) (claims directed to delivering music content).

5

they are nonetheless ineligible because none of the claims describe "*how*" to solve any problem. This premise is demonstrably false. Claims do not cover just any digital-data compression system or method. Instead, even the key, summary-form aspects of each respective invention makes clear the claimed solutions are limited to distinct subsets of the digital-data compression field.

Project Taurus's arguments to the contrary rely on pure attorney argument and are contradicted by the record. On the '728 patent, Project Taurus's argument is solely about a single limitation—"analyze data within a data block"—and ignores the other limitations of the claims. *See* Mot. at 2-3. But those other limitations are part of the technological solutions that Project Taurus asserts is missing. For example, the '728 patent claim 1 recites "content dependent data compression encoder," which the Texas court has construed to be "compression using one or more encoders selected based on the encoder's (or encoders') ability to effectively encode the data type or content of the data block." *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-cv-00084-JDL, D.I. 104 (E.D. Tex. Apr. 25, 2018). The "content dependent data compression encoder" and a separate "single data compression encoder," together with specific configurations regarding how a data block is processed, form a specific and particularized solution to the technological problems described in the patent.

Moreover, Project Taurus is also wrong that there is no "explanation of how to 'analyze data within a data block" (Mot. at 2-3). The claims themselves recite technological details: "processor is configured: to analyze data within a data block to identify one or more parameters or attributes of the data ***wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of the one or more parameters or attributes of the data within the data block***." '728 patent claim 1.  The claimed analysis is not satisfied by just any computerized analysis of incoming

6

digital data. To the contrary, the claim requires a direct examination of the digital data itself, instead of the prevailing and problematic technical method employed before the time of the patent filing, which was to use "conventional content dependent techniques" that rely solely on digital "file type descriptors [that] are typically appended to file names" (such as, e.g., ".doc," ".exe," etc.). '728 patent at 2:67-3:19. That prevailing method had problems, including difficulties in keeping up with "the extremely large number of application programs" and "the rate at which new application programs are developed and the need to update file format data descriptions accordingly." '728 patent at 2:67-3:19. Project Taurus's argument regarding "analysis" fails, and all the other limitations (e.g., "content dependent data compression encoder," etc.) further refute Project Taurus's argument that the '728 patent claims do not describe "how" to solve problems.

The other patents likewise contradict Project Taurus's attorney arguments. For example, Project Taurus's argument that "the '751 patent does not explain *how* to achieve that accelerated compression and storage" (Mot. at 3) is refuted by the claims themselves. For instance, claim 1 of the '751 patent recites "utilizing a state machine," "analyzing content of a data block to identify a parameter, attribute, or value of the data block that excludes analyzing based solely on reading a descriptor," and "selecting an encoder associated with the identified parameter, attribute, or value." These are specific and particular technological solutions that achieve accelerated compression and storage.

Similarly, Project Taurus's argument that the '530 and '908 patents do not describe "*how* to achieve that high-speed compression goal" (Mot. at 4) is refuted by the claims themselves. For example, the '530 and '908 patent claims specifically require a particular structure that is not satisfied by just any digital-data compression system or even any digital-data compression system using two or more different encoders. Instead, it requires more: a data accelerator that is coupled

7

to a memory device, where the data accelerator compresses data using two different compression techniques and a data descriptor is used. '530 patent claim 1. Project Taurus's arguments that the claims "describe only generic computer components and processes" (Mot. at 4) and that utilizing two different encoders is merely a "high-level idea" (*id.*) are pure attorney arguments with no factual support. And these same arguments have squarely been considered and refuted:

> "[C]laims [of the '530 and '908 patents] as a whole show a non-abstract idea despite disclosing generic, conventional computing elements. [] The claims pair a data accelerator with a memory device, and then places a data stream with a proper technique that compresses the data stream and puts the stream into storage more efficiently. '530 Patent at 2:58–3:58; '908 Patent at 2:58–3:58. … Here, the patents improve a technological process by pairing data blocks with specific techniques to achieve 'an effective increase of [] data storage and retrieval bandwidth of a memory storage device.' '530 Patent at 2:61–62; '908 Patent at 2:61–62."

(D.I. 21, Ex. 1 at 15.) Project Taurus's argument that "claims do not even purport to explain *why* any particular encoder should be used" (Mot. at 5) makes no sense. There is no requirement that claims explain "why" an invention should do what it does. Regardless, the claims do explain why different encoders should be used: to make compression and storage "occur faster." (*See* '530 patent claim 1.) Indeed, "patents improve a technological process by pairing data blocks with specific techniques to achieve 'an effective increase of [] data storage and retrieval bandwidth of a memory storage device.'" (D.I. 21, Ex. 1 at 15.)[3]

The patented claims are akin to the patent at issue in *Ancora Tech., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), which involved a patent claiming "method of restricting software operation" to "improv[e] security," where the claim recited using "specific and unique

---

[3] Project Taurus's argument regarding claims 21 through 30 of the '908 patent (*see* Mot. at 5, fn.1) fails for similar reasons. Claims 21-30 of the '908 patent recite two different compression techniques and applying the two techniques in specific ways recited in the claims. Thus, these claims also "improve a technological process by pairing data blocks with specific techniques to achieve 'an effective increase of [] data storage and retrieval bandwidth of a memory storage device.'" (D.I. 21, Ex. 1 at 15.)

8

characteristics of certain aspects of the BIOS that the patent asserts, and [the court] lack[s] any basis for disputing, were not previously used in the way now claimed." 908 F.3d at 1349. Like in *Ancora*, the patents at issue here are "directed to a solution to a computer-functionality problem": digital data compression systems to increase the capacity of a computer system to store or transfer data more efficiently, accomplished by specific claimed elements (*e.g.*, using state machine, data accelerator, performing analysis that is not based solely on a descriptor, etc.).

Project Taurus asks the Court to ignore the actual claim elements, limitations, and sections of the patent specification and, instead, invites the Court to hold that every claim element of every asserted claims are all just "desired results." The Court should reject the sweeping and baseless characterizations Project Taurus seeks. At bottom, the claims require specific structures and specific ways to perform the claimed functionalities, which can only be satisfied by a specific subset of digital-data compression systems. None of the elements that Project Taurus cherry-picks is merely a "desired result," let alone *all* of them, as Project Taurus wrongly argues. At the very least, this Court must accept all descriptions of the claimed inventions from the intrinsic record as true, and drawing all reasonable inferences in favor of Realtime, deny Project Taurus's motion.

    **C.**    **Project Taurus Has Not and Cannot Establish that the Claims Are Patent Ineligible Under *Alice* Step 2.**

Because Project Taurus cannot meet its burden under *Alice* step 1, the inquiry ends there and step 2 need not be addressed. But in any event, Project Taurus also cannot meet its burden under step 2. Step 2 requires examination of the claim elements "both individually and 'as an ordered combination.'" *Alice*, 134 S. Ct. at 2355. Defendants cannot prevail on this step simply by showing that individual claim elements are "known in the art." *Bascom*, 827 F.3d at 1349–50. Indeed, "[t]he genius of invention is often a combination of known elements which in hindsight seems preordained." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001).

9

Moreover, "that something is disclosed in a piece of prior art ***does not mean it was well-understood, routine, and conventional***." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Project Taurus provides nothing more than attorney arguments in its assertion that some individual elements are purportedly not "inventive."[4]

The Federal Circuit in *Berkheimer* confirmed that any *Alice* step 2 analysis involves underlying factual questions. *Id.* at 1368-69. Specifically, the court clarified that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is ***a question of fact*** … [which] must be proven by ***clear and convincing evidence***." *Id.*; see also Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121 (Fed. Cir. 2018).

Project Taurus does not even attempt to rebut any of the evidence provided in Realtime's opposition to Western Digital's motion to dismiss, including from the specifications of the four asserted patents, identification of particular solutions that solve technological problems, and citations to specific portions of the prosecution file histories (including the fact that the PTAB confirmed patentability of all challenged claims of the '728, '530, and '908 patents after adversarial *inter partes* review proceedings) that confirm that the claims of the asserted patents are inventive. *See* D.I. 20 at 16-19. A proper § 101 analysis shows that the claims recite specific, discrete implementations of digital data compression, and the recited claim elements "operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs*, 841 F.3d at 1300–01. Indeed, the Court must take the specification's statements about the purported invention to be true, and is not free to accept contrary attorney argument. *Bascom Glob. Internet*

---

[4] *See, e.g., Estee Lauder v. L'Oreal*, 129 F.3d 588, 595 (Fed. Cir. 1997) ("Arguments of counsel cannot take the place of evidence lacking in the record.").

10

*Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d at 1352 (patents and facts are "construed in favor of [the patentee] as they must be in this procedural posture").

II. **PROJECT TAURUS'S ATTEMPT TO INVALIDATE 129 CLAIMS BASED ON A CURSORY DISCUSSION OF 4 NON-REPRESENTATIVE CLAIMS FAILS.**

Similar to Western Digital, Project Taurus adopts an "all remaining claims" shortcut to argue that *all claims* from the '728, '751, '530, and '908 patents are ineligible. *See* Mot. at 5–9 (arguing that "all of the asserted claims are ineligible based on an analysis of certain representative claims"). This fails. (*See* D.I. 20 at 19–21.) At bottom, Project Taurus provides only conclusory attorney argument that a few claims are allegedly "representative." Project Taurus fails to show by clear and convincing evidence that *all* claims from the four asserted patents (totaling 129 claims) are patent-ineligible. In doing so, Project Taurus mischaracterizes the law of representative claims under a §101 analysis. Project Taurus also ignores the significant differences in the claims that confirm they are patent-eligible under both *Alice* steps 1 and 2.

B. ***Berkheimer* confirms that it is inappropriate to treat all claims here as representative and that factual issues preclude a finding of invalidity in a motion to dismiss.**

Project Taurus's reliance on *Berkheimer* undermines its argument. In *Berkheimer*, the Federal Circuit recognized that: "Courts ***may*** treat a claim as representative in ***certain situations***[.]" *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1365 (Fed. Cir. 2018) (emphasis added). But the court held that the patentee had ***not*** waived its argument that the dependent claims were not invalid under §101 since the patentee (a) never agreed that the independent claim was representative of all the claims for purposes of §101 and (b) had maintained that the limitations included in the dependent claims were relevant to the patentability issue. *Id.* at 1365–66. The Federal Circuit noted that: "A claim is not representative simply because it is an independent claim." *Id.* at 1356.

11

Likewise, here, Realtime has never agreed that the lone independent claim from each patent is representative of all claims. To the contrary, Realtime identifies specific limitations in other claims relevant to patentability. (D.I. 20 at 20.) Project Taurus also implies that the claims it asserts are representative largely because they are independent claims. This invites legal error. *See Berkheimer* at 1365–66 (error for district to treat claim 1 as representative because it was the only asserted independent claim and patentee focused its "primary arguments" on claim 1).

Further, in *Berkheimer*, the patentee argued that limitations drawn to "effecting a one-to-many change" added inventive concepts. *Id.* at 1365. The Federal Circuit found that this argument applied to the dependent claims because the independent claim did not recite such a limitation. *Id.* Thus, even though the Federal Circuit affirmed the district court's finding that the independent claim was invalid under §101, that finding did ***not*** apply to dependent claims. Indeed, the Federal Circuit vacated and remanded summary judgment as to the dependent claims because there were underlying disputed issues of fact on whether the dependent claims added an inventive concept and other fact questions. *Id.* at 1370–71.

Likewise, here, Realtime identifies distinct limitations in the other claims that add inventive concepts. At minimum, the differences between the other claims and the non-representative claims that Project Taurus identifies invoke questions of fact that preclude a finding of invalidity. Project Taurus's motion to dismiss should be denied.

> C.  **The identified claims are *not* representative, and the other claims add inventive and non-abstract limitations that confirm the claims are patent-eligible under both *Alice* steps 1 and 2.**

Project Taurus's "representativeness" arguments fail because Realtime has never agreed to treat the claims as representative and identifies the distinctive significance of limitations found in the other claims, as discussed below. These limitations show that the claims are directed to non-abstract subject matter and claim technological, inventive concepts. Thus, these limitations

12

demonstrate that Project Taurus's motion to dismiss should be denied under both *Alice* steps 1 and 2.

**'728 Patent**: Project Taurus's argument that '728 patent claim 1 is representative of all other claims is unsupported and incorrect. (*See* Mot. at 6–7.) Project Taurus glosses over the claims and ignores significant limitations. For example, claim 24 is a separate *independent* claim and a distinct invention from claim 1. Claim 24 recites the limitation "compressing the data block with at least one of the one or more data compression encoders, *otherwise* compressing the data block with the default data compression encoder." This is patentably distinct from claim 1, which recites "to perform data compression with the single data compression encoder, if the one or more parameters or attributes are not identified"—without the term "otherwise."

Project Taurus's argument that claim 25 is "merely the method version of the system claimed in claim 1" is also incorrect. Claim 25 is a separate independent claim directed to a "computer implemented method." Further, claim 25 recites limitations that appear nowhere in claim 1. For example, claim 25 recites: "determining, using the processor, whether to output the data block in a received form or in a compressed form." Claim 25 also recites "outputting, using the processor, the data block in the received form or the compressed form based on the determination."

Project Taurus's discussion of the '728 dependent claims (Mot. at 7) also fail. Project Taurus's motion confirms that these claims contain other distinct and technological concepts such as "one or more data blocks transmitted in sequence originating form an [external/internal] source"; "real-time" digital data compression;  "associate a data token indicative of the [] compression encoder"; "lossy" or "lossless" compression; "desired resolution of the lossy compression"; "output the data block in uncompressed form"; "compressed data block indicative

13

of data expansion"; and many others. Project Taurus's argument that all dependent claims "make only minor additions that do not impact the Section 101 analysis" (Mot. at 7) is mere attorney argument and wholly conclusory. In deciding a motion to dismiss, the Court should reject Project Taurus's arguments.

**'751 patent:** Like for the '728 patent, Project Taurus's argument regarding the representative nature of the '751 patent claim 25 also fail. Project Taurus's attorney argument cannot overcome the fact that the other claims of the '751 patent include other distinct and technological elements, such as "data packet including both control information and compressed data information" (cl. 2, 26); "compressed data blocks transmitted in sequence" (cl. 4, 28); "plurality of synchronization points" (cl. 5, 29); "synchronization point occurs at the beginning of at least one of the UDP Packets" (cl. 6, 30); "at least one synchronization point per data block" (cl. 9, 33); "synchronization point [that] is a predetermined byte sequence" (cl. 10); "resetting the state machine" (cl. 13, 36); "one or more global state machines" (cl. 13, 38); "selectively storing data blocks … based on a priori knowledge of data block structure" (cl. 14, 38); "local state machines" (cl. 16, 40); "state machine [that] is a fixed table" (cl. 17, 41); "state machine [that] is an adaptive table" (cl. 18, 42); and "default lossless encoder" (cl. 22, 46). Project Taurus concedes that there are "additional limitations," but argue that they "have nothing to do with that purported solution, nor do they appear to solve any other identified problems in the prior art" (Mot. at 8). That argument is wholly unsupported and false. All of these additional limitations, on their face, form a part of the patented technological solution that solve the problems of the prior art.

**'908 and '530 Patents:** Project Taurus's cursory, one-paragraph treatment of the all claims in the '908 and '530 patents (Mot. at 8–9) also fails. These are two separate patents that bear one similarity: the PTAB issued final written decisions in IPR proceedings, confirming the non-

obviousness of all challenged claims of the '908 and '530 patents. (*See* D.I. 21, Exs. 8–9.) For the '530 patent, Project Taurus's motion ignores the actual limitations that contain distinct and technological concepts. For example, claim 2–23 recite: "data accelerator stores said first descriptor to said memory device," "retrieves said first descriptor . . . from said memory device"; "retrieves said compressed data stream from said memory device"; data accelerator performs "decompression"; "data accelerator is coupled to said memory device via a small computer systems interface"; "data accelerator is coupled to said memory device via a fibre channel," etc.

Likewise, for the '908 patent, Project Taurus's motion ignores most of the actual claims. Project Taurus fails to discuss claims 21, 25, and 29, which are separate independent claims and have different limitations than claim 1. Project Taurus also fails to discuss the dependent claims of claims 21, 25, and 29. Project Taurus's motion also ignores the actual limitations that contain distinct and technological concepts. Those limitations are, for example: "[first descriptor/second descriptor] is capable of being utilized to decompress at least a portion of the [first/second] data block"; "retrieves the first descriptor and the first compressed data block from the memory device"; "retrieval of the first compressed data block from the memory device and the decompression occurs faster than the first data block is able to be retrieved from the memory device in uncompressed form"; "coupled to the memory device via an industry standard disk interface," "compressed by the third compression technique in real-time,"  "the token includes values corresponding to a one or more encoding techniques"; etc.

Project Taurus argues that "[n]one of these limitations renders the claims [patent-eligible]" (Mot. at 9). But that argument is wholly unsupported and false. All of limitations on their face, form a part of the patented technological solution that solve the problems of the prior art.

### III. DEFENDANTS' CITATION TO THE REPORT AND RECOMMENDATION IN *REALTIME ADAPTIVE STREAMING LLC V. NETLFIX* (D.I. 27) IS

15

**INAPPLICABLE.**

Project Taurus filed a "notice of supplemental authority," citing to Magistrate Judge Fallon's Report and Recommendation ("R&R") issued in *Realtime Adaptive Streaming LLC v. Netflix*, C.A. No. 17-1692-CFC-SRF (D. Del. Dec. 12, 2018) ("the Netflix case"). (D.I. 27.) That R&R is inapplicable here because, respectfully, it is based on legal error. Plaintiff in that case, Realtime Adaptive Streaming LLC, is expected to object to the R&R. The R&R is also contrary to opinion issued by District Judge Wu in the Central District of California involving the same patents as the Netflix case. District Judge Wu held that the vast majority of the patents at issue in those cases were patent eligible. (Ex. A (*Realtime Adaptive Streaming LLC v. Google LLC*, No. 2:18-cv-03629-GW-JC, D.I. 36 (C.D. Cal. Oct. 25, 2018).) Moreover, the R&R is also inapplicable in view of the prior court rulings, from multiple judges and districts, holding that the patents at issue in this case are patent eligible. (*See* D.I. 21 at Ex. 1-4.)

| | |
|---|---|
| December 20, 2018 | BAYARD, P.A. |
| OF COUNSEL: | /s/ Stephen B. Brauerman |
| | Stephen B. Brauerman (No. 4952) |
| Marc A. Fenster | Sara E. Bussiere (No. 5725) |
| Brian D. Ledahl | 600 N. King Street, Suite 400 |
| Reza Mirzaie | Wilmington, DE 19801 |
| Paul A. Kroeger | (302) 655-5000 |
| C. Jay Chung | sbrauerman@bayardlaw.com |
| Philip X. Wang | sbussiere@bayardlaw.com |
| RUSS, AUGUST & KABAT | |
| 12424 Wilshire Boulevard, 12th Floor | *Attorneys for Plaintiff Realtime Data LLC* |
| (310) 826-7474 | |
| Los Angeles, CA 90025-1031 | |
| mfenster@raklaw.com | |
| bledahl@raklaw.com | |
| rmirzaie@raklaw.com | |
| pkroeger@raklaw.com | |
| jchung@raklaw.com | |
| pwang@raklaw.com | |